STATE BOARD OF TAX COM-
MISSIONERS, Appellant
(Respondent Below),

v.

TOWN OF ST. JOHN, et al., Appellees
(Petitioners Below).

No. 49S10–0009–TA–541.

Supreme Court of Indiana.

July 18, 2001.

Karen M. Freeman–Wilson, Attorney General of Indiana, Jon Laramore, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellant.

Thomas M. Atherton, Katz and Korin, James K. Gilday, Wood, Tuohy, Gleason, Mercer & Herrin, Kenneth J. Falk, Indiana Civil Liberties Union, Richard A. Waples, Waples and Hanger, Peter H. Donahoe, Hill, Fulwider, McDowell, Funk & Matthews, P.C., Indianapolis, IN, Attorneys for Appellees.

SHEPARD, Chief Justice.

We return to the ongoing case in which taxpayers proved Indiana's real property assessment scheme unconstitutional. They now ask us to adopt and apply a common law exception to the American rule and award them their legal fees as private attorneys general. We decline.

### Facts & Procedural History

In 1993, the Town of St. John and various taxpayers ("Taxpayers") challenged Indiana's real property assessment procedure, asserting that it did not provide "a uniform and equal rate of property assessment and taxation. . . ." Ind. Const. art. X, § 1(a); *Town of St. John v. State Bd. of Tax Comm'rs,* 665 N.E.2d 965 (Ind.Tax 1996). Seven reported decisions later (two in this Court[1] and five in the Indiana Tax

---

**1.** *State Bd. of Tax Comm'rs v. Town of St. John,* 702 N.E.2d 1034 (Ind.1998); *Boehm v.*    *Town of St. John,* 675 N.E.2d 318 (Ind.1996).

Court[2]), the Tax Court ordered the State Board of Tax Commissioners "to adopt new, constitutional regulations...." *Town of St. John v. State Bd. of Tax Comm'rs,* 729 N.E.2d 242, 251 (Ind.Tax 2000). That mandate is still pending.

Having prevailed on the merits, Taxpayers asked for an award of attorney fees under a private attorney general theory. *Town of St. John v. State Bd. of Tax Comm'rs,* 730 N.E.2d 240, 242 (Ind.Tax 2000). The Tax Court granted the request and ordered the Taxpayers to submit their proposed award. *Id.* at 265. The State Board sought review in this Court, and the Tax Court stayed the deadline for submission of Taxpayers' claim. *Town of St. John v. State Bd. of Tax Comm'rs,* No. 49T10–9309–TA–70 (Ind. Tax July 12, 2000) (order granting motion to extend time to file proposed fees).

## I. The Private Attorney General Doctrine: An Overview

■■■ As a prelude to analyzing Indiana law, we note that there are two basic attorney fee schemes: the English rule ("loser pays") and the American rule ("every man for himself"). W. Kent Davis, *The International View of Attorney Fees in Civil Suits: Why Is the United States the "Odd Man Out" in How It Pays Its Lawyers?,* 16 Ariz. J. Int'l & Comp. L. 361, 399, 403 (1999). Both schemes are grounded in statute. *Id.* at 400, 404.

Some view the English rule as more fair, arguing that a legal victory is not complete if one is out of pocket for attorney fees.

*Id.* at 405. Proponents of the American rule respond:

> [S]ince litigation is at best uncertain one should not be penalized for merely defending or prosecuting a lawsuit, and [ ] the poor might be unjustly discouraged from instituting actions to vindicate their rights if the penalty for losing included the fees of their opponents' counsel. Also, the time, expense, and difficulties of proof inherent in litigating the question of what constitutes reasonable attorney's fees would pose substantial burdens for judicial administration.

*Fleischmann Distilling Corp. v. Maier Brewing Co.,* 386 U.S. 714, 718, 87 S.Ct. 1404, 18 L.Ed.2d 475 (1967) (citations omitted).

Courts in various American jurisdictions have sought a middle ground by using their inherent equitable powers to carve out exceptions to the American rule. *See Saint Joseph's College v. Morrison, Inc.,* 158 Ind.App. 272, 279, 302 N.E.2d 865, 870 (1973). The most common exceptions are:

1) The "obdurate behavior" exception, in which courts impose costs upon defendants as a punishment for bringing frivolous actions or otherwise acting in bad faith. Andrew W. Hull, *Attorney's Fees for Frivolous, Unreasonable or Groundless Litigation,* 20 Ind. L.Rev. 151, 152–53 (1987).

2) The "common fund" exception, in which an award benefits members of an ascertainable class, and the court reimburses the prevailing litigant's attorney fees out of that pool of money to prevent the unjust enrichment of free riders. *Id.* at n. 11.[3]

---

**2.** *Town of St. John v. State Bd. of Tax Comm'rs,* 729 N.E.2d 242 (Ind.Tax 2000); 698 N.E.2d 399 (Ind.Tax 1998); 691 N.E.2d 1387 (Ind.Tax 1998); 690 N.E.2d 370 (Ind. Tax 1997); 665 N.E.2d 965 (Ind.Tax 1996).

**3.** One variant on this exception is the "substantial benefit" doctrine, where the prevail-

ing party attains a significant benefit for an ascertainable class of similarly situated individuals, although no fund of money is created. *See Cnty. Care Ctrs, Inc. v. Indiana Family and Soc. Servs. Admin.,* 716 N.E.2d 519, 543 (Ind.Ct.App.1999).

3) The "private attorney general" exception, where courts award fees to litigants who bring actions to protect important social policies or rights. *Id.*

Judge Jerome Frank coined the phrase "private attorney general" in 1943, to describe a private person acting to "vindicate the public interest." *Associated Indus. v. Ickes*, 134 F.2d 694, 704 (2d Cir.1943). In 1975, the U.S. Supreme Court resolved a federal circuit split by declining to reallocate by judicial decree the burdens of federal litigation under the private attorney general doctrine. *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 247, 270 n. 46, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975). The Court expressed concern that without statutory authorization, authority to make fee awards would leave courts free to "pick and choose among plaintiffs and the statutes under which they sue and to award fees in some cases but not in others, depending upon the courts' assessment of the importance of the public policies involved in particular cases." *Id.* at 269, 95 S.Ct. 1612. The Court recently reaffirmed its commitment to the American rule, citing *Alyeska*, in *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 602, 121 S.Ct. 1835, 1839 (Rehnquist, C.J., for majority), 1856 (Ginsburg, J., dissenting), 149 L.Ed.2d 855 (2001).

## II. What Indiana Courts Have Said

*Supreme Court.* In 1944 (around the time the private attorney general doctrine was born), this Court implicitly acknowledged its common-law authority to create exceptions to the American rule, and stated Indiana's baseline fee rule. Said Justice Shake, "The right to recover attorneys' fees from one's opponent does not exist in the absence of a statute or some agreement, though a court of equity may, under some circumstances, allow attorneys' fees to be paid out of a fund brought under its control." *Gavin v. Miller*, 222 Ind. 459, 465, 54 N.E.2d 277, 280 (1944) (citations omitted)(estate administration case). *See also Trotcky v. Van Sickle*, 227 Ind. 441, 85 N.E.2d 638 (1949)(denying fees in a nuisance case). In *City of Hammond v. Darlington*, 241 Ind. 536, 542, 162 N.E.2d 619, 621 (1959), we applied this "common fund" concept flexibly to award fees to an attorney whose lawsuit prevented the City from paying judgments totaling $950,000.

In *Kikkert v. Krumm*, 474 N.E.2d 503, 505 (Ind.1985), we discussed the obdurate behavior exception to the American rule, but found it inapplicable under the facts presented. The following year, the Indiana legislature codified this exception in what is now Ind.Code Ann. § 34–52–1–1 (West 2001). The "General Recovery Rule" allows prevailing parties to recover attorney fees if the court finds the other party brought or pursued a frivolous, unreasonable or groundless claim or defense, or acted in bad faith. *Id.* at § 34–52–1–1(b).

*Court of Appeals.* In a number of cases, our Court of Appeals has referred to the three American rule exceptions listed above, in order to provide context for a

---

Terminology varies among jurisdictions. The phrase "substantial benefit" has been used by some courts to describe what we call the private attorney general doctrine. *See Claremont Sch. Dist. v. Governor*, 144 N.H. 590, 761 A.2d 389, 392–93 (1999) (adopting a "substantial benefit doctrine" that mirrors what we call the private attorney general doctrine); *see also Arnold v. Ariz. Dep't of Health Servs.*, 160 Ariz. 593, 775 P.2d 521, 536–37 (1989)(treating "private attorney general doctrine" and "substantial benefits doctrine" as interchangeable terms).

case holding.[4] In *City of Marion v. Antrobus*, 448 N.E.2d 325, 332 (Ind.Ct.App. 1983), the court went so far as to say that Indiana recognized all three exceptions. *See also City of E. Chicago v. Broomes*, 468 N.E.2d 231, 234 (Ind.Ct.App.1984); *Dotlich v. Dotlich*, 475 N.E.2d 331, 347 (Ind.Ct.App.1985).

In *Downing v. City of Columbus*, 505 N.E.2d 841, 845 (Ind.Ct.App.1987), however, the court correctly observed that the private attorney general exception had been discussed only in dicta, and never applied in Indiana to award a prevailing party its fees. More recently, in *Morgan County v. Ferguson*, 712 N.E.2d 1038, 1044 (Ind.Ct.App.1999), the court reversed an award of attorney fees to a plaintiff who had purchased a tax deed that the county issued in error, stating that the private attorney general exception only applies if supported by statutory authority. *Id.*[5]

### III. Other Jurisdictions Have Mixed Views

*States Adopting the Exception.* A number of state high courts have adopted the private attorney general exception.[6] One widely-cited case is *Serrano v. Priest*, 20 Cal.3d 25, 141 Cal.Rptr. 315, 569 P.2d 1303 (1977), in which the California Supreme Court recognized the exception because:

> In the complex society in which we live it frequently occurs that citizens in great numbers and across a broad spectrum have interests in common. These, while of enormous significance to the society as a whole, do not involve the fortunes of a single individual to the extent necessary to encourage their private vindication in the courts. Although there are within the executive branch of the government offices and institutions (exemplified by the Attorney General) whose function it is to represent the general public in such matters and to ensure proper enforcement, for various reasons the burden of enforcement is not always adequately carried by those offices and institutions, rendering some sort of private action imperative. Because the issues involved in such litigation are often extremely complex and their presentation time-consuming and costly, the availability of representation of such public interests by private attorneys acting pro bono publico is limited.

*Id.*, 141 Cal.Rptr. 315, 569 P.2d at 1313.[7]

New Hampshire was among the most recent to adopt the private attorney gener-

---

**4.** *See, e.g., Saint Joseph's College*, 158 Ind. App. at 279–80, 302 N.E.2d at 870; *City of Indianapolis v. Cent. R.R. Co. of Indianapolis*, 175 Ind.App. 120, 125, 369 N.E.2d 1109, 1113 (1977); *Umbreit v. Chester B. Stem, Inc.*, 176 Ind.App. 53, 57, 373 N.E.2d 1116, 1119 (1978); *Cox v. Ubik*, 424 N.E.2d 127, 129 (Ind.Ct.App.1981); *Greensburg Local #761 Printing Specialities v. Robbins*, 549 N.E.2d 79, 80 (Ind.Ct.App.1990); *In re Estate of Kroslack*, 570 N.E.2d 117, 120 (Ind.Ct.App.1991); *Wernke v. Halas*, 600 N.E.2d 117, 123 (Ind.Ct. App.1992).

**5.** The Tax Court characterized this conclusion as "illogical" because "the private attorney general exception necessarily comes into play only when no statute authorizing an award of attorneys' fees applies to the facts before the court." *Town of St. John v. State Bd. of Tax Comm'rs*, 730 N.E.2d at 247 n. 7. We interpret *Ferguson* to mean that, because Indiana's courts have not adopted and applied a common-law private attorney general exception to the American rule, fee-shifting in public interest litigation is limited to those situations covered by statute.

**6.** *See, e.g., Montanans for the Responsible Use of the Sch. Trust v. State*, 296 Mont. 402, 989 P.2d 800 (1999); *Arnold v. Ariz. Dep't of Health Servs.*, 160 Ariz. 593, 775 P.2d 521 (1989); *Brown v. State*, 565 So.2d 585 (Ala. 1990); *Deras v. Myers*, 272 Or. 47, 535 P.2d 541 (1975); *Stewart v. Utah Pub. Serv. Comm'n*, 885 P.2d 759 (Utah 1994).

**7.** California's legislature subsequently codified the exception by statute. *See Woodland Hills Residents Assoc., Inc. v. City Council of*

al doctrine, in *Claremont School District v. Governor*, 144 N.H. 590, 761 A.2d 389 (1999)(fees sought following declaratory judgment that the state public education funding system was unconstitutional). The New Hampshire Supreme Court observed that "proportional and reasonable taxation is one of the core constitutional foundations of this State" and held that "[t]he public interest in preserving constitutional rights against governmental infringement is paramount. Only private citizens can be expected to 'guard the guardians.' Because the benefits of this litigation flow to all members of the public, the plaintiffs should not have to bear the entire cost of this litigation." *Id.* at 393–94.

*States Rejecting the Exception.* Likewise, a number of states have rejected the private attorney general doctrine.[8] Chief Justice Minzner of the New Mexico Supreme Court expressed these concerns:

> Unbridled judicial authority to "pick and choose" which plaintiffs and causes of action merit an award of attorney fees under the private attorney general doctrine would not promote equal access to the courts for the resolution of good faith disputes inasmuch as it lacks sufficient guidelines to prevent courts from treating similarly situated parties differently and could easily result in decisions that favor a particular class of private litigants while unduly discouraging the government from mounting a good faith defense. Such authority also would not promote the goal of conserving judicial resources inasmuch as it calls for the courts to engage in a fact-specific reexamination of the . merits of a case to determine the significance and scope of the rights that have been protected.

*N.M. Right to Choose v. Johnson*, 127 N.M. 654, 986 P.2d 450, 459 (1999) (citations omitted).

## IV. No Proven Need for This Two-Edged Sword

*Our Statutory Scheme.* Indiana has scores of statutes that provide some form of fee shifting. Several of those statutes allow private citizens to bring suit to redress wrongs that involve the public interest, and to recover attorney fees if they prevail. For example, Indiana's housing discrimination statute recognizes a private right of action and allows recovery of attorney's fees. Ind.Code Ann. § 22–9.5–7–2 (West 2001). A prevailing plaintiff in a historic preservation action may also recover attorney fees. Ind.Code Ann. § 36–7–11–21 (West 2001). Indiana's Open Door Law, Ind.Code Ann. § 5–14–1.5–7 (West 2001), and Access to Public Records statute, Ind.Code Ann. § 5–14–3–9 (West 2001), both allow attorney fees but only if the plaintiff follows certain specific procedural prerequisites before filing suit.

In 1986, our legislature added a general statute governing fee-shifting in actions involving the State, to supplement the various statutes providing for fee-shifting in particular areas of law. Under what is now Ind.Code Ann. § 34–52–2–2, 3 (West

L.A., 23 Cal.3d 917, 154 Cal.Rptr. 503, 593 P.2d 200, 206 (1979).

**8.** *See Doe v. State*, 216 Conn. 85, 579 A.2d 37 (1990); *Hamer v. Kirk*, 64 Ill.2d 434, 1 Ill.Dec. 336, 356 N.E.2d 524 (1976); *Jones v. Muir*, 511 Pa. 535, 515 A.2d 855 (1986); *Providence Journal Co. v. Mason*, 116 R.I. 614, 359 A.2d 682 (1976); *Blue Sky Advocates v. State*, 107 Wash.2d 112, 727 P.2d 644 (1986); *Pearson v.*

*Bd. of Health of Chicopee*, 402 Mass. 797, 525 N.E.2d 400 (1988); *Nemeth v. Abonmarche Dev., Inc.*, 457 Mich. 16, 576 N.W.2d 641 (1998); *Van Emmerik v. Mont. Dakota Utils. Co.*, 332 N.W.2d 279, 284 (S.D.1983), *cert. denied*, 464 U.S. 915, 104 S.Ct. 278, 78 L.Ed.2d 257 ·(1983); *Holbert v. Echeverria*, 744 P.2d 960 (Okla.1987).

2001), small businesses and not-for-profit organizations may recover limited attorney fees against state agencies that have acted unreasonably. The statute lists the types of proceedings for which fees are available, and some for which fees are not available. *Id.* at § 34–52–2–1.

It is apparent that the General Assembly knows how to create statutory exceptions to the American rule, and that it has been willing to do so when it deems appropriate. Taking into account the plethora of statutory provisions already on the books, we are not persuaded that the judiciary needs to adopt a sweeping common-law exception to the American rule for all public interest litigation.

*A Slippery Slope.* Moreover, we could easily create more problems than we would solve by adopting the private attorney general doctrine. The Tax Court applied a commonly used three-factor analysis that considers (1) the societal importance of the vindicated right; (2) the necessity for private enforcement and the accompanying burden; and (3) the number of people benefiting from the decision. *Town of St. John,* 730 N.E.2d at 256 (citing *Serrano,* 141 Cal.Rptr. 315, 569 P.2d at 1314). A review of these factors suggests the swamp we might enter by awarding fees in this case.

To begin, societal importance is in the eye of the beholder. The subjectivity involved in ranking various public interests could make it difficult for prospective litigants to know in advance whether fee reimbursement would accompany a victory. Given this uncertainty, it is far from clear that the doctrine would serve as a significant incentive to those seeking to vindicate the public interest.

On the other hand, a broadly-applied American rule exception could create a contrary risk. Fee-shifting could significantly alter the dynamics of public interest litigation in Indiana by attracting "bounty hunters" to the arena. *See* Bryant Garth, Ilene H. Nagel & S. Jay Plager, *The Institution of the Private Attorney General: Perspectives From an Empirical Study of Class Action Litigation,* 61 S. Cal. L.Rev. 353, 354 (1988). We do not question the motives of the attorneys in this case, but a decision for the Taxpayers could easily produce a host of unintended consequences in future cases.

The Taxpayers address this concern in part by asking for a relatively narrow holding, limited to the context of constitutional claims. This approach assumes, however, that each and every constitutional provision represents a higher social priority than any statutory provision.

In fact, because statutory law is far more easily updated than constitutional law, in many areas it more accurately reflects current social priorities. For example, Indiana statutes cover human services, including health care; family and juvenile issues, including child custody rights; and environmental protection. *See* Ind.Code Ann. Titles 12, 13, 31. All are areas of undeniable importance that are not specifically addressed in our constitution. It does not belittle the rights embodied in the Indiana Constitution to say that we cannot presume that constitutional mention automatically equates to degree of current social importance.[9]

---

9. *See, e.g.,* Ind. Const. art. XV, § 10, which requires the General Assembly "to provide for the permanent enclosure and preservation of the Tippecanoe Battle Ground." It is certainly important to maintain this historic site, but it would make little sense to grant attorney fees to a plaintiff who stands up for this constitutional provision, but not to a plaintiff who champions one of the statutory rights described above.

The second factor in the Tax Court's test would call upon courts to decide whether private enforcement is necessary in any given action, and how great is the burden of the private action. We accept that private enforcement was necessary to effectuate change in this case, but many questions remain about the burden on the Taxpayers.

Among these questions is upon whom the burden falls. While the Taxpayers have yet to quantify their fee request, they do not deny that they are not actually liable to pay any attorney fees. (*See* Appellant's Br. at 29.) We then face the question whether the only relevant burden is on the party itself, or whether we should also consider the burden on a prevailing party's attorneys.

The question of burden reflects, of course, on what might be a reasonable fee. This can be a complicated and time-consuming determination in any case, and a private attorney general claim would present some special difficulties. For example, should the maximum hourly rate in Indiana Code § 34–52–2–2, which governs fees in actions involving the State, apply? Once a litigant crosses the "sufficient burden" threshold, should that party be eligible for one hundred percent fee reimbursement, or limited to the portion representing the excessive burden? If some prevailing parties in a particular action are well-funded and others are not, may all claim fees?

The third prong of the Tax Court's test is perhaps most problematic of all: did a significant number of Indiana citizens benefit from this decision? The Taxpayers argue that a more transparent and constitutionally sound real property taxation scheme is a benefit to all. The Tax Court agreed, saying, "[A]ll Indiana citizens, either directly or indirectly, stand to benefit from this litigation's outcome" because they will be treated more equally and fairly. *Town of St. John,* 730 N.E.2d at 259.

If challenging unconstitutional or ultra vires action is a good in and of itself, however, this factor becomes mere surplusage. Here, many residential taxpayers will shoulder a greater share of the property tax burden when the Tax Court order is implemented, absent legislative intervention. State Bd. of Tax Comm'rs, *The Projected Fiscal Impact of the 2001 Reassessment* 6, Table 1 (1999). These folks might well regard a taxpayer-funded fee award as adding insult to injury, rather than as rewarding a deserving benefactor.

The three-factor test is not the only source of difficulties. Under the Tax Court formulation, fees would be available to those who "vindicate" important constitutional principles. *Town of St. John,* 730 N.E.2d at 256. What exactly must a party accomplish to claim that a "vindication" has occurred?

The Taxpayers here won their lawsuit, so presumably they would qualify.[10] Suppose, however, that the State Board had decided that change was inevitable and rendered the case moot after several years of litigation by revising its methods to conform to the Taxpayers' demands. The policy argument for granting attorney fees to the Taxpayers would be just as strong. *See, e.g., Suter v. City of Lafayette,* 57 Cal.App.4th 1109, 67 Cal.Rptr.2d 420 (1997)(in California, a litigant need only be "a catalyst speeding the defendant to act" to qualify for a fee award). A fee award

---

10. The fact that a municipality is the class representative adds another wrinkle to this case. Because we decline to adopt the private attorney general doctrine generally, we do not delve into the propriety or ramifications of shifting a cost from one level of government to another.

could, however, discourage government officials from settling meritorious claims or responding to them by revising objectionable practices. *See Buckhannon Bd. & Care Home,* 121 S.Ct. at 1838–39, 1842–43 (acknowledging the policy argument, then rejecting the "catalyst theory" recognized by most federal circuits based upon the plain statutory meaning of "prevailing party"). It could also encourage those seeking governmental action to prefer going to court over pursuing non-litigious alternatives.

The questions do not end there. The U.S. Supreme Court, in *Alyeska,* pointed out three more: Should defendants as well as plaintiffs be eligible for fee awards? Should awards be mandatory, or discretionary? Should the presumption be for or against a fee award? 421 U.S. 240, 264, 95 S.Ct. 1612.

*The Bottom Line.* Indiana's courts regularly tackle tough issues, as we have in this very case. At the end of the day we are not convinced, however, of either the need for or the wisdom of adopting the private attorney general doctrine.

### Conclusion

We therefore reverse the decision of the Tax Court and direct that it deny the petition for fees.

DICKSON, SULLIVAN and RUCKER, JJ., concur.

BOEHM, J., not participating.