

**ATTORNEY FOR APPELLANT**

Leanna Weissmann
Lawrenceburg, Indiana

**ATTORNEYS FOR APPELLEES**

Chad D. Wuertz
Wuertz Law Office, LLC
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| In re Petition of Wiper Corporation for Tax Deed, | August 16, 2017 |
| | Court of Appeals Case No. 87A01-1512-MI-2335 |
| Wiper Corporation, | |
| *Appellant-Petitioner/Cross-Appellee,* | Appeal from the Warrick Circuit Court |
| v. | The Honorable Greg A. Granger, Judge |
| Patricia E. Godwin, Barbara S. Sanders, Joseph Kaufman, James Zwickel, Thad Fischer, Trent Fischer, and Trina Fischer Boden, | Trial Court Cause No. 87C01-1008-MI-572 |
| *Appellees-Respondents/Cross-Appellants* | |

**Crone, Judge.**

## Case Summary

[1] Attorneys, like gamblers, should "know when to hold 'em [and] know when to fold 'em."[1] Instead of walking away from litigation that was essentially over, attorneys representing the owners of property that was sold for nonpayment of taxes racked up thousands of dollars in fees and costs trying to keep the buyer of the property, Wiper Corporation ("Wiper"), from receiving a refund for its tax sale purchase, which had been invalidated by county officials on unspecified grounds. The refund issue is governed by statute and is not within the property owners' control. After a hearing, the trial court issued an order denying Wiper a refund and applying the purchase money to the property owners' delinquent tax obligations. Wiper contends that the trial court had no legal authority to do so. We agree and therefore reverse and remand on this issue.

[2] The trial court also ordered Wiper to pay the property owners' attorney's fees and costs dating back to November 2011, when Wiper petitioned for a tax deed to their property, based on a finding that Wiper deceived the court and failed to comply with statutory notice requirements and the property owners' discovery requests. Wiper contends that the trial court erred in doing so. We agree with the trial court's decision to award fees and costs based on Wiper's misconduct but hold that the award should be limited to fees and costs incurred before February 25, 2013, when Wiper essentially folded 'em by conceding the

---

[1] KENNY ROGERS, THE GAMBLER (United Artists 1978).

invalidity of its tax sale purchase. Therefore, we also reverse and remand on this issue.

[3] On cross-appeal, the property owners contend that the trial court erred in failing to impose sanctions against Wiper's attorney and in deeming certain issues moot in a prior order. We find these issues waived and therefore affirm in relevant part.

## Facts and Procedural History

[4] In March 2007, Fifth Third Bank, as trustee of the May S. Zwickel Trust, conveyed property in Warrick County ("the Property") to Patricia Godwin, Barbara Sanders, Linda Kaufman, James Zwickel, Thad Fischer, Trent Fischer, and Trina Fischer Boden (collectively "the Owners") by trustee's deed.[2] The deed lists the Owners' mailing address as James's address in Tennessee ("the Tennessee Address") and indicates that tax statements should be sent to that address. Owners' Ex. 8. The deed was recorded in the Warrick County recorder's office in April 2007. *Id*.

[5] According to James, the house he "grew up in" was on the Property. Tr. at 91. He was responsible for paying taxes on the Property for several years after the deed was issued, and then Patricia "was supposed to pay them for several years." *Id*. at 94. James moved from the Tennessee address in late 2009 or

---

[2] We refer to the Owners and others by first name for clarity's sake.

early 2010, and Patricia was supposed to have the Warrick County auditor's records updated to reflect her Colorado address but did not do so because "she had a lot going on in her life." *Id.* at 100. In any event, the Owners did not pay the 2008 and 2009 taxes on the Property.

[6] "If an owner of real estate fails to pay the property taxes, the property may be sold in order to satisfy the tax obligation." *In re 2007 Tax Sale in Lake Cty.*, 926 N.E.2d 524, 527 (Ind. Ct. App. 2010). "The tax sale process is purely a statutory creation and requires material compliance with each step of the governing statutes …." *Id.* "The tax sale process involves the issuance of three notices to the property owner. The first required notice is the county auditor's notice of tax sale …." *Id.* "The second required notice is the notice of the right of redemption, which the person who purchases the property at a tax sale sends to the owner of the property." *Id.* at 528. And the third required notice is the notice of filing a petition for tax deed, which the purchaser sends to the property owner. *Id.*

[7] In July 2010, the Warrick County auditor sent a notice of tax sale to the Owners via certified mail to the Tennessee Address. The certified mail receipt was signed by a person with no interest in the Property. On August 30, 2010, the auditor and the treasurer filed a joint application for judgment and order of sale for numerous properties with delinquent taxes, including the Property. The next day, the trial court entered a judgment and order of sale.

[8] On September 16, 2010, the treasurer sold the Property to Vinod Gupta at the tax sale for $6800, which included the delinquent 2008 and 2009 property taxes plus penalties, interest, and costs. The auditor issued Vinod a tax sale certificate, which Vinod assigned to Wiper. Vinod is Wiper's president. Vinod's son Vivek acted as Wiper's attorney during the tax sale proceedings.

[9] The Owners had one year after the tax sale to redeem the Property. Ind. Code § 6-1.1-25-4. At that time, Indiana Code Section 6-1.1-25-4.5(c) provided that a purchaser of a tax sale certificate was entitled to a tax deed to the property only if the redemption period had expired, the property had not been redeemed within the statutory period, and, not later than ninety days after the date of sale, the purchaser gave notice of the sale to "the owner of record at the time of the sale …." Subsection (d) of the statute provided that the purchaser "shall give the notice by sending a copy of the notice by certified mail to … the owner of record at the time of the [sale of the property] at the last address of the owner for the property, as indicated in the records of the county auditor[.]" And subsection (h) provided that the notice "is considered sufficient if the notice is mailed to the address required under subsection (d)." In March 2011, Wiper sent two envelopes ("the March Envelopes") containing multiple notices of the tax sale via certified mail to the Tennessee Address. Both envelopes were returned as not deliverable as addressed/unable to forward.

[10] In May 2011, Linda's husband Joseph[3] went to the treasurer's office at the request of Linda and Patricia, his sister-in-law, who asked him to inquire if any taxes were due on the Property, pay the taxes, and update the county's records for the Property to reflect Patricia's address in Colorado ("the Colorado Address"). Joseph paid the spring 2011 property taxes and gave the treasurer's office the Colorado Address. For reasons unknown, the treasurer's office did not inform Joseph about the pending tax sale proceeding. In June 2011, the auditor's office updated the Owners' address in its records.

[11] The one-year redemption period for the Property expired in September 2011. At that time, Indiana Code Section 6-1.1-25-4.6(a) stated that not later than six months after the expiration of the redemption period, the tax sale purchaser may file a verified petition

> asking the court to direct the county auditor to issue a tax deed if the real property is not redeemed from the sale. Notice of the filing of this petition shall be given to the same parties and in the same manner as provided in section 4.5 of this chapter …. The notice required by this section is considered sufficient if the notice is sent to the address required by section 4.5(d) of this chapter. Any person owning or having an interest in the tract or real property may file a written objection to the petition with the court not later than thirty (30) days after the date the petition was filed. If a written objection is timely filed, the court shall conduct a hearing on the objection.

---

[3] Joseph became Linda's successor in interest to the Property, as indicated by the case caption.

Subsection (b) of the statute provided that not later than sixty-one days after the petition is filed,

> the court shall enter an order directing the county auditor … to issue to the petitioner a tax deed if the court finds that the following conditions exist:
> (1) The time of redemption has expired.
> (2) The tract or real property has not been redeemed ….
> (3) [A]ll taxes and special assessments, penalties, and costs have been paid.
> (4) The notices required by this section and section 4.5 of this chapter have been given.
> (5) The petitioner has complied with all the provisions of law entitling the petitioner to a deed.

Ind. Code § 6-1.1-25-4.6(b).

[12]  In November 2011, Wiper sent two envelopes ("the November Envelopes") containing notices of its intent to file a verified petition for a tax deed to the Property to the Tennessee Address via certified mail. Both envelopes were returned as not deliverable as addressed/unable to forward. On November 14, Wiper filed a verified petition for a tax deed to the Property stating that it had given the notices required by statute and "complied with all the provisions of law entitling the purchaser to a deed." Appellant's App. at 79.

[13]  Later that month, Patricia independently found out about the tax sale proceeding. On November 21, the Owners filed an objection to Wiper's petition and a motion for relief from the trial court's judgment and order of sale. The objection alleged that "deficiencies in the tax sale, redemption and tax sale

notice process exist herein which preclude the entry of a tax deed in relation to the Property." *Id.* at 86. On December 14, the Owners filed a supporting brief in which they alleged that the auditor's notice and the auditor and the treasurer's petition regarding the tax sale were deficient in various respects, as was the tax sale order and Wiper's notice of tax sale under Indiana Code Section 6-1.1-25-4.5. Most important for purposes of this appeal, the Owners also alleged that Wiper failed to provide proper notice of the filing of the petition for tax deed under Indiana Code Section 6-1.1-25-4.6 because, by the time that notice was sent, the Owners' address had been updated in the county's records to the Colorado Address. In February 2012, the trial court set a hearing on the Owners' objection for June 13.

[14] In the meantime, around January 19, 2012, the Owners served their first set of discovery requests on Wiper, with a response due on February 18. In a March 22 letter to Vivek, the Owners' counsel Andrew Ozete stated that no response had been received and that unless Wiper withdrew its petition for tax deed with prejudice by March 29, Ozete would begin preparing a motion for summary judgment that would "seek to have all costs and attorneys' fees incurred by [the Owners] awarded to them as a judgment against [Wiper] since it is clear to [Ozete] now that at no time ever did [Wiper] have a meritorious basis to maintain this action." *Id.* at 314. On or about March 23, Wiper submitted responses to the Owners' discovery requests. In response to an interrogatory, Wiper stated that it had reviewed the treasurer's files regarding the Property in September 2011; thus, Wiper either knew or should have known of the

Colorado Address before it sent notice of its intent to file a petition for tax deed in November 2011. Also, Wiper did not comply with the Owners' request to produce any documents related to the requirements of Indiana Code Sections 6-1.1-25-4.5 and -4.6, i.e., the March Envelopes and the November Envelopes and the certified mail receipts. On April 2, the Owners served a second set of discovery requests on Wiper, specifically asking it to produce those documents.

[15] On April 27, the treasurer and the auditor filed a report stating that they deemed the tax sale to be invalid. No reason for the invalidation was given.[4] The report also stated that a letter had been sent to Wiper via certified mail that read as follows: "Pursuant to IC 6-1.1-25-10, [the auditor and the treasurer] have found the sale of the below listed tax sale certificates to be invalid. Please return your tax sale certificate(s) to the [auditor's] office. Your statutory refund will be processed upon receipt of your tax sale certificates." *Id*. at 221. Copies of the report were served on Vivek and Ozete.

[16] On May 4, the Owners filed a motion to compel Wiper's compliance with discovery, a motion for attorney's fees and costs, a request for a finding that Wiper failed to comply with notice requirements, and a request for an order determining that Wiper was entitled to a refund of only seventy-five percent of the tax sale surplus and was prohibited from participating in the next tax sale

---

[4] Wiper's assertion that the auditor and the treasurer invalidated the sale "due to internal failures in their tax sale process" is not supported by its citation to the record. Appellant's Br. at 5 (citing Appellant's App. at 221).

pursuant to Indiana Code Section 6-1.1-25-4.6. At that time, the statute provided in relevant part that if a petition for tax deed is timely filed and the court refuses to enter an order directing the county auditor to execute and deliver the tax deed because of the petitioner's failure to fulfill the notice requirement under subsection (a) of the statute,

> the court shall order the return of the amount, if any, by which the purchase price exceeds the minimum bid on the property … minus a penalty of twenty-five percent (25%) of that excess. The petitioner is prohibited from participating in any manner in the next succeeding tax sale in the county under IC 6-1.1-24. The county auditor shall deposit penalties paid under this subsection in the county general fund.

Ind. Code § 6-1.1-25-4.6(d). The statute also provided that, notwithstanding subsection (d), "the court shall not order the return of the purchase price or any part of the purchase price if: (1) the purchaser … has failed to provide notice or has provided insufficient notice as required by section 4.5 of this chapter; and (2) the sale is otherwise valid." Ind. Code § 6-1.1-25-4.6(f).

[17]    On May 17, Wiper filed a report stating that it had received the letter from the auditor and the treasurer and that Wiper had requested a reason for their invalidation of the tax sale but had not yet received a response; Wiper opined that "the certificate was arbitrarily invalidated." Appellant's App. at 364. On May 21, the Owners filed a motion to vacate the hearing on their objection to the tax sale and a motion to set a hearing on their motion to compel. Also on that date, Wiper filed an opposition to the Owners' May 4 motion in which it

asserted that the Owners' pleadings were "moot" based on the invalidation of the tax sale and that it had provided copies of the certified mail receipts, which it had not. *Id.* at 371.

[18] On May 24, the trial court vacated the June 13 hearing and reset it for July 12. On June 18, Wiper filed an opposition to the Owners' motion to set a hearing on their motion to compel and a motion to dismiss the cause pertaining to the tax sale certificate "in its entirety," asserting that the Owners' "pleadings are moot based on the invalidation" of the tax sale. *Id.* at 380. On June 21, the Owners filed a response that reads in relevant part as follows:

> 1. Wiper alleges that the controversy at issue in the case has been settled or disposed of; however, that is not true in this case. Pursuant to I.C. 6-1.1-25-4.6, an issue or controversy exists as to how much, if any, of a refund of the amounts paid at Tax Sale Wiper is entitled to.
>
> 2. Pursuant to that same statute, an issue exists as to whether or not Wiper should be allowed to participate in the next tax sale in this County.
>
> ….
>
> 7. In this case, as was discussed in [the Owners'] Motion to Compel, Wiper's Verified Petition appears to have been filed containing statements that were apparently either not within the personal knowledge of the Affiant or deliberately false.
>
> 8. It also appears, as is described in the Motion to Compel, that Wiper made misrepresentations to the Court in its prior Extension Motion.

9. Given that Wiper and/or its principals are participants in Tax Sales with some regularity in multiple jurisdictions throughout the State of Indiana, including Warrick County, Indiana, it is critical that Wiper, like a bad mortgage servicer, be called to task and held to account for filing a false Affidavit in this case and to be deterred from future attempts to do so.

10. Finally, although Wiper in the Wiper Objection and Motion to Dismiss now concedes the County's authority to invalidate the tax sale as to the relevant certificate, (and thus the issue of whether a tax deed may issue is clearly now by admission of Wiper answered in the negative), this change of position from Wiper's Report to Court sent on or about May 14, 2012 does not resolve the issue of the amount of refund, if any, due Wiper or resolve [the Owners'] request for sanctions.

*Id*. at 391-92 (citations omitted).

[19] On June 25, the trial court vacated the July 12 hearing on its own motion and ordered each party to submit "in writing its position on whether this cause is ended by the sale being declared invalid. If a party believes the matter should not be ended, the party shall explain what issues it believes remains to be decided by the Court." *Id*. at 395. On October 20, after receiving responses from Wiper, the Owners, and the county, the court issued an order ("the Hearing Order") that reads in pertinent part,

The Court, being duly advised, and based upon the pleadings of record issues the following findings as follows in relation to each of the following issues:

1. Issue One: What amount, if any, of refund is Wiper entitled to in relation to this matter?

2. Issue Two: Should Wiper and Vinod Gupta be barred from participating in the next tax sale in this County?

It is Ordered, Adjudged and Decreed that the Hearing Issues are the only issues remaining before the Court. All other issues previously raised, other than as may be necessary in relation to the enforcement of the terms of this Order, are moot and shall not be addressed further by any party.

*Id*. at 426. The court set a hearing on the issues for January 14, 2013. Neither Wiper nor the Owners sought reconsideration of or an interlocutory appeal from the Hearing Order. On November 15, Wiper filed a designation of evidence and witness list. Attached to the designation was an affidavit from Vinod stating that he had sent the tax sale notices.

[20] On January 7, 2013, the parties agreed to continue the hearing to March 6. On February 7, Wiper filed a motion to determine and order refund and a motion to quash a subpoena requiring it to appear for a deposition on February 18. The motion to quash stated in pertinent part:

9. Warrick County officials sold Wiper a tax certificate and later declared the sale invalid. County officials are required to and are willing to issue Wiper a refund. Similarly, Wiper is willing to accept the refund. Thus, this matter is solely between Warrick County and Wiper.

10. This Court, Wiper and Warrick County officials including the auditor and treasurer have standing to determine the outcome of the two remaining issues.

11. However, [the Owners] continue to make unreasonable and

oppressive demands, despite the sale being declared invalid and this Court's Order entered on October 30, 2012.

....

13.  Although Wiper's counsel agreed to provide [items requested by the Owners' counsel, the Owners] nevertheless insist on deposing Wiper.

14.  Wiper should not be forced to expend its resources on this deposition for the resolution of extraneous issues which have been ordered "moot and shall not be addressed further by any party."

15.  [The Owners'] demands are far reaching, time consuming, and extraordinarily expensive on matters which have been ordered "moot and shall not be addressed further by any party."

*Id*. at 462-63.  The trial court denied Wiper's motion to quash, and Vinod was deposed on February 18.  At the deposition, Wiper produced the March Envelopes and the November Envelopes, which the Owners had not seen. Also, Vinod admitted that he had not sent the tax sale notices as he had averred in his affidavit.  On February 25, Wiper withdrew its petition for tax deed.

[21]  On March 1, the Owners filed a motion to continue the hearing, asserting that "depositions of additional witnesses [were] necessary" because Vinod did not know when the county records were searched to determine the Owners' proper address, among other things.  *Id*. at 538.  On that date, the trial court entered an order continuing the hearing to a "date to be determined after depositions."  *Id*.

at 543. On May 1, the Owners deposed Vivek, who invoked the attorney-client privilege in response to certain questions.

[22]   The next relevant CCS entry was not made until 2015. On March 18, 2015, the trial court set the hearing for May 6. On May 6, the hearing was reset to July 22. On that date, the hearing was finally held by a different judge than the one who had entered the Hearing Order. Attorney Lewis Maudlin appeared on Wiper's behalf. An attorney appeared on the auditor's behalf and expressed his "understanding" that "there was no county matters being handled today." Tr. at 4. Maudlin opined that "there is a county issue present somewhat in that […] the county's the one that pays the refund." *Id.*

[23]   In his opening statement for the Owners, Ozete proclaimed,

> This is a matter about the refund due in a tax sale case. [N]ot just the issue of whether or not [Wiper] provided proper notice as implicated but we'll show today that not only was proper notice not given but that Wiper Corporation is engaged in fraud upon this tribunal that must be addressed. We will show that it knew it did not send correct notice to my clients. We will […] show that they knowingly […] filed a false verified petition in this cause. We will show that Wiper filed a false affidavit in this cause. We will show that Wiper actively hid the evidence of its complicity in this cause. We will show that Wiper has improperly asserted the attorney/client privilege to further obscure the evidence in this case.

*Id.* at 5.

Maudlin replied, "Today we're only here on two issues. We're not here on fraud. We're not here on attorney's fees. We're not here on noticing. We are here simply according to the [Hearing] Order which has not been set aside, [...] there's been [no] Motion to Correct Error. It has not been overturned." *Id.* at 7. He asserted that Indiana Code Section 6-1.1-25-10 was dispositive and remarked, "For some reason, um, Mr. Ozete's clients have run this through the Court. Racked up absorbent [sic] attorney's fees since April 27th, 2012. In every other Court case in the state this has been resolved. [Y]ou will not find a case that has gone through the Court of Appeals." *Id.* at 8. During the hearing, Maudlin objected on relevance grounds to evidence that allegedly related to issues other than those stated in the Hearing Order.

On December 1, 2015, the trial court issued an order ("the December 2015 Order") that contains the following findings and conclusions:

### FINDINGS OF FACT

….

24. By late November, 2011, [the Owners had] otherwise independently found out about the tax sale proceeding, and on or about November 28, 2011, counsel for [the Owners] directed a correspondence to counsel for Wiper (the "November Letter"), advising Wiper that [the Owners were] not at the Tennessee Address and that no notice had been received.

25. What counsel for [the Owners] could not have known at the time is that Wiper already knew that [the Owners were] at the Colorado Address and not at the Tennessee Address, and that Wiper would hide this fact for over a year of litigation in an effort

to pull the proverbial wool over [the Owners'] eyes.

26. After the November Letter, Wiper did not withdraw its Verified Petition, although it had actual knowledge that it had not sent proper notice.

27. Nor did Wiper withdraw its Verified Petition after [the Owners] filed [their] Objection thereto in December, 2011.

….

36. In oral argument in this matter, Counsel for Wiper argued that Wiper … "promptly dismissed" the petition for tax deed [after the tax sale was invalidated].

37. This statement was untrue.

38. In May, 2012, in its Report to Court, Wiper questioned the cancellation of the Tax Sale Certificate.

39. Likewise in May, 2012, in its Opposition to [the Owners'] Motion to Compel Compliance, Wiper alleged that it provided proof of mailing of its tax sale notices.

40. Wiper made the allegation that it had provided the proof of mailing in order to refute [the Owners'] allegation that discovery had been withheld in relation to certified mail.

41. At the time Wiper made these allegations, it knew it had not provided the March Envelopes and the November Envelopes, and was deliberately trying to deceive the Court and [the Owners] about compliance with the Discovery Requests.

….

55. This Court's [CCS] reveals that it was not until February 25, 2013, just after this February 18, 2013 deposition, where the

March Envelopes and the November Envelopes were revealed, that Wiper filed its Withdrawal of Petition for Tax Deed.

56. By that time, Wiper had been keeping secret its knowledge that Wiper had failed to disclose the fact that it had actual knowledge that [the Owners were] not at the Tennessee Address for more than a year after discovery had been issued asking for the very documents that would have proven this knowledge. Wiper was playing a waiting game to see how long it could hold out and avoid disclosing its knowledge of the correct address for [the Owners], and in the process frustrate [the Owners] by unnecessarily delaying the litigation.

57. Thereafter, Vivek Gupta was also deposed as a representative of Wiper Corporation under Trial Rule 30(B)(6).

58. At that deposition, [the Owners] attempted to verify certain other allegations contained in the Verified Petition.

59. Instead of responding, Wiper asserted the attorney client privilege.

60. When the Court entered the Hearing Order, it could not have known that Wiper would have failed to disclose and hidden the fact that it had actual knowledge that [the Owners were] not at the Tennessee Address.

61. Likewise, when the Court entered the Hearing Order, it could not have known that Wiper would later in the Wiper Designation continue to allege that the Verified Petition should be relied upon by this Court.

62. The Verified Petition contained a statement "that the notices required by law have been given as follows… Your petitioner has served notice of the tax sale pursuant to IC 6-1.1-25-4.5 upon the owner of record and anyone with a substantial interest of public record by certified mail within nine months of the tax

sale."

63. This statement was untrue.

64. Moreover, inasmuch as Gupta/Wiper by April, 2011, when the March Envelopes were returned, had actual knowledge that [the Owners were] not at the Tennessee Address, did nothing further to ascertain a correct address return of the March Envelopes, or thereafter search the records of the County when the correct Colorado Address of [the Owners] was shown, but rather sent the November notices again to an address that it knew [the Owners were] not at when it knew or should have known [the Owners'] correct address. Wiper knew that this statement 6a in the Verified Petition was false when made.

65. Similarly, items 6b and 7 in the Verified Petition were untrue.[5]

66. Wiper also knew that these statements were untrue when made, the knowledge of both Vinod Gupta, its officer, and Vivek V. Gupta, its attorney, are imputable to Wiper.

67. Neither Vinod C. Gupta nor Vivek V. Gupta appeared in person for or was called as a witness by Wiper at the hearing of this matter on July 22, 2015. The Court did not have the benefit of live testimony to observe and evaluate the witnesses' credibility.

## CONCLUSIONS OF LAW

---

[5] Item 6b states, "Your petitioner has served a copy of this petition and notice of filing of verified petition for order directing the auditor to issue tax deed pursuant to I.C. 6-1.1-25-4.6, upon the owner of record on the date of the tax sale and anyone with a substantial interest of public record by certified mail on or about 11/7/2011." Appellant's App. at 79. Item 7 states, "That the petitioner has complied with all of the provisions of law entitling the purchaser to a deed." *Id*.

….

18. Wiper did not comply with the notice requirements of Ind. Code § 6-1.1-25-4.5 or Ind. Code § 6-1.1-25-4.6.

19. Wiper knew at the time of the signing of its Verified Petition that it had not complied with the same.

20. Wiper employed an out of date address and an address other than the address on file in the Auditor's office [the Colorado Address] when it sent the 4.6 Notice.

21. Wiper was not entitled to a tax deed in this matter when it filed its Verified Petition, having failed to comply with either the 4.5 or 4.6 Notice requirements.

22. Any claim by Wiper in this matter, including for a refund, is barred by the doctrine of unclean hands.

23. Wiper did not make a bona fide effort to comply with the 4.5 Notice [or] 4.6 Notice requirements and presented no evidence that it was entitled to a refund of any amount, therefore, Wiper is entitled to no refund.

24. Wiper brought this action on a claim that was frivolous, unreasonable, or groundless and/or continued to litigate this action after Wiper's claim clearly became frivolous, unreasonable, or groundless. I.C. 34-52-1-1[.]

25. [The Owners are] the prevailing [parties] in this action.

26. Wiper, by filing its Verified Petition for Order Directing Auditor to Issue Tax Deed on November 14, 2011, put in issue in this proceeding its compliance, as a matter of fact and law, with Indiana's statutory scheme regarding tax sales, including the required substantial compliance with its duty to properly comply with the notice requirements.

27. Wiper improperly withheld the March Envelopes and November Envelopes from the Discovery Responses.

28. [The Owners are] entitled to an award of attorneys' fees and costs herein.

### ORDER

It is therefore **ORDERED, ADJUDGED AND DECREED** as follows:

1. [The Owners are] the prevailing party in this action.

2. Wiper shall not be entitled to any refund in relation to this matter, and the amount paid by Wiper shall be applied to the tax obligations of [the Owners] on the Real Estate.

3. Wiper and Vinod Gupta shall be barred from participating in the next tax sale in this county.

4. The tax sale certificate in relation to the Property is deemed null and void.

5. Wiper shall be required to pay all reasonable attorneys' fees and costs incurred by [the Owners] in this action from and after November 14, 2011.

6. A hearing is hereby set for the 28[th] day of January, 2016, […] at which time [the Owners] may present evidence of [their] reasonable attorneys' fees and costs incurred in this action from and after November 14, 2011.

December 2015 Order at 1-15 (citations and footnotes omitted).

[26]     On December 31, Wiper filed a notice of appeal from the December 2015 Order as a purported final judgment. In January 2016, the trial court held a hearing on fees and costs. In March 2016, the trial court issued an order ("the Fees Order"), which we set forth below, awarding the Owners over $72,000 in fees and costs through January 5, 2016, and reserving the amount and reasonableness of fees and costs incurred thereafter for future proceedings. The Owners cross-appealed the December 2015 Order. In their reply brief, the Owners argued for the first time that the December 2015 Order was not a final judgment because it reserved the issue of attorney's fees and costs for a future hearing, and therefore Wiper's appeal should be dismissed for lack of subject matter jurisdiction. Wiper requested, and we granted, permission to respond to the Owners' reply brief. In response to Wiper's request, the Owners argued that Wiper's appeal was frivolous or in bad faith and requested appellate attorneys' fees. In a memorandum decision, we dismissed Wiper's appeal for lack of subject matter jurisdiction and denied the Owners' request for appellate attorneys' fees. *In re Petition of Wiper Corp. for Tax Deed*, No. 87A01-1512-MI-2335, 2016 WL 5873895, at *3-4 (Ind. Ct. App. Oct. 5, 2016).[6] Wiper then sought permission to file an amended notice of appeal, which we granted. We now address the merits of Wiper's appeal and the Owners' cross-appeal.

---

[6] Several months after we issued our decision, our supreme court held that a premature notice of appeal "is not fatal to appellate jurisdiction" and that a reviewing court may elect to decide the merits of a premature appeal. *In re D.J. v. Ind. Dep't of Child Servs.*, 68 N.E.3d 574, 576 (Ind. 2017).

# Discussion and Decision

## Section 1 – The trial court had no legal authority to deny Wiper a refund for its invalidated tax sale purchase and apply the purchase money to the Owners' tax obligations.

[27] Wiper first contends that the trial court had no legal authority to deny it a refund for its invalidated tax sale purchase and apply its purchase money to the Owners' tax obligations. We agree. Such refunds are governed by statute. "Statutory interpretation is a question of law and is reviewed de novo, or without deference to the trial court's interpretation." *In re J.W., Jr.*, 27 N.E.3d 1185, 1189 (Ind. Ct. App. 2015), *trans. denied*. The Owners do not specifically assert, and the record before us does not establish, that Wiper may be denied a refund pursuant to Indiana Code Section 6-1.1-25-4.6(f); assuming for argument's sake that Wiper provided insufficient notice under Indiana Code Section 6-1.1-25-4.5, there is no indication that the sale was "otherwise valid."

[28] Thus, the only applicable statute is Indiana Code Section 6-1.1-25-10, which the auditor and the treasurer cited in their April 2012 letter to Wiper declaring the tax sale invalid. At that time, the statute read in pertinent part,

> (a) If, before the court issues an order directing the county auditor to issue a tax deed to a tract or item of real property …, it is found by the county auditor and the county treasurer that the sale was invalid, the county auditor *shall* refund:
>
> > (1) the purchase money and all taxes and special assessments on the property paid by the purchaser after the tax sale plus six percent (6%) interest per annum; and

> > (2) [certain costs paid by the purchaser or the purchaser's assigns];

> from the county treasury to the purchaser [or the purchaser's assigns].

Ind. Code § 6-1.1-25-10 (emphasis added). If the word "shall" is used in a statute, "it is construed as mandatory language creating a statutory right to a particular outcome after certain conditions are met." *G.E. v. Ind. Dep't of Child Servs.*, 29 N.E.3d 769, 771 (Ind. Ct. App. 2015).

[29] Here, the auditor and the treasurer found that the tax sale was invalid while Wiper's petition for tax deed was pending before the trial court.[7] Ultimately, the trial court did not issue an order to issue a tax deed, but that has no bearing on our analysis. Therefore, we conclude that Wiper is entitled to a refund pursuant to Indiana Code Section 6-1.1-25-10. Neither the trial court nor the Owners have cited any authority for the proposition that the equitable doctrine of unclean hands may be used to nullify a statutory right granted by the legislature, and we are aware of none. Moreover, neither the trial court nor the Owners have cited any authority for the proposition that tax sale purchase money may be applied to a property owner's delinquent tax obligations. *Cf.* Ind. Code § 6-1.1-25-4.6(d) (stating that auditor "shall deposit penalties paid

---

[7] Indiana Code Section 6-1.1-25-4.6(b) states that a court shall issue an order to issue a tax deed within sixty-one days after a tax sale purchaser files a petition for tax deed, but meeting this deadline may prove impossible due to an objection filed by a property owner, as happened here.

under this subsection in the county general fund."). The Owners claim that Wiper "failed to introduce any evidence supporting a claim for a refund[.]" Appellees' Br. at 33. But Wiper points out that the Owners themselves offered into evidence a copy of the tax sale certificate, which states that Vinod paid $6800 for the Property. Owners' Ex. 6. Wiper contends that it is entitled to a refund of that amount plus the statutory six percent interest per annum. We agree and therefore reverse and remand with instructions to order the auditor to refund that amount to Wiper pursuant to Indiana Code Section 6-1.1-25-10.[8]

## Section 2 – The trial court abused its discretion in awarding the Owners attorney's fees and costs incurred after Wiper withdrew its petition for tax deed.

[30] The Fees Order reads in pertinent part as follows:

> 1. From and after November 23, 2011 through and including January 5, 2016 that [the Owners'] counsel had devoted at least 245.05 hours of time related to the matter before the Court. Said time equated to $70,931.00 in fees.
>
> 2. In addition to the foregoing fees, expenses in the amount of $2,060.24 were incurred in relation to this matter from and after November 14, 2011 and including January 5, 2016.
>
> 3. Not only was the average hourly rate for such services of $288.50 reasonable, the amount charged and time spent for each billing entry was provided to the Court. The rates charged for

---

[8] Wiper does not specifically contend that it is entitled to any additional amounts. Also, Wiper does not challenge the trial court's ruling barring Wiper and Vinod from participating in the next tax sale because "that sale has come and gone, mooting this concern." Appellant's Br. at 15 n.4.

each time entry were described to the Court. Each of the hourly rates charged were reasonable and in accord with rates in the locality for similar legal services.

4. Significant evidence was presented as to the nature of the services provided. Not only were the bills describing the services and additional time data provided, but also additional testimony was offered describing the nature of the services. The amount of time spent was reasonable, and was the result of the misconduct of Wiper who intended to cause [the Owners] to incur these costs.

5. Evidence was presented establishing that the attorney primarily involved in this matter for [the Owners] was experienced in tax sale matters and is of good reputation and ability.

6. Evidence was presented that the Court previously found that a knowingly false verified petition was filed and that the opposing party was trying to deliberately deceive the Court which required [the Owners'] attorney to be versed in a matter of this nature that was both non-routine and required considerable skill.

7. Evidence was presented as to the nature and amount of expenses, and the same were reasonable.

8. Finally, evidence was presented that [the Owners continue] to accrue fees and costs herein.

9. Based upon the experience of Mr. Ozete, the principal attorney representing [the Owners], and the results obtained, the rates charged in this matter were reasonable.

**IT IS THEREFORE ORDERED, ADJUDGED AND DECREED** by the Court that [the Owners are] entitled to recover from Wiper Corporation the sum of $72,991.24 in relation to [their] reasonable fees and costs incurred herein

through January 5, 2016.

**IT IS FURTHER ORDERED, ADJUDGED AND DECREED** that Wiper Corporation shall, within thirty (30) days of the entry of this Order, pay to [the Owners], care of its counsel herein, the sum of $72,991.24.

**IT IS FURTHER ORDERED, ADJUDGED AND DECREED** that the amount and reasonableness of attorneys' fees and costs incurred by [the Owners] after January 5, 2016 are hereby reserved for future proceedings in this matter.

Fees Order at 1-3.

[31] Initially, we observe that Indiana follows the American Rule, which provides that a prevailing party has no right to recover attorney's fees from the opposition absent statutory authority, an agreement between the parties, or an equitable exception. *Loparex, LLC v. MPI Release Tech., LLC*, 964 N.E.2d 806, 816 (Ind. 2012) (citing *State Bd. of Tax Comm'rs v. Town of St. John*, 751 N.E.2d 657, 659 (Ind. 2001)). As indicated in the December 2015 Order, the trial court awarded the Owners attorney's fees pursuant to Indiana Code Section 34-52-1-1, which states in pertinent part that a court "may award attorney's fees as part of the cost to the prevailing party" in any civil action if the court finds that either party brought the action on a claim that is frivolous, unreasonable, or groundless or continued to litigate the action after the party's claim clearly became frivolous, unreasonable, or groundless. "Broadly stated, the attorney-fee statute strikes a balance between respect for an attorney's duty of zealous advocacy and the important policy of discouraging unnecessary and

unwarranted litigation." *Kitchell v. Franklin*, 26 N.E.3d 1050, 1056 (Ind. Ct. App. 2015) (citation and quotation marks omitted), *trans. denied*.

[32] The court's decision to award fees under this statute is subject to a multi-level review. *In re Moeder*, 27 N.E.3d 1089, 1101 (Ind. Ct. App. 2015), *trans. denied*.

> First, the trial court's findings of fact are reviewed under the clearly erroneous standard. Next, the court's legal conclusions regarding whether the litigant's claim was frivolous, unreasonable, or groundless are reviewed *de novo*. Finally, the court's decision to award attorney's fees and any amount thereof is reviewed for an abuse of discretion. A trial court abuses its discretion if its decision is clearly against the logic and effect of the facts and circumstances or if the court has misinterpreted the law.

*Id*. at 1101-02 (citations omitted).

[33] Wiper does not specifically argue that Indiana Code Section 34-52-1-1 is inapplicable here. Nor does it specifically challenge the trial court's determination that it brought its action on a claim that was frivolous, unreasonable, or groundless or continued to litigate the action after its claim clearly became frivolous, unreasonable, or groundless. Wiper does argue, however, that

> [w]hen the county invalidated the tax sale, [the] Owners were given all the relief to which they were entitled. The trial court specifically limited the litigation to Wiper's refund and the next tax sale. These issues did not concern [the] Owners because … a delinquent taxpayer has no statutory right to the purchase money from an invalidated tax sale. Thus, [the] Owners had no need to

draft interrogatories, to take depositions, or to call witnesses at the final hearing. Since the matter no longer concerned [the] Owners, their appearance at the hearing was not even necessary.

Appellant's Br. at 19.[9]

[34] It is true that once the county invalidated the tax sale in April 2012, the Owners were given all the relief to which they were entitled under the tax sale statutes; they had no right to any potential refund, which was a matter strictly between Wiper and the county.[10] But it is also true that instead of immediately withdrawing its petition for tax deed, Wiper questioned the propriety of the tax sale invalidation and continued to sandbag the Owners' discovery requests. Not until after Vinod's February 2013 deposition did Wiper withdraw its petition for tax deed, thereby abandoning any claim of right to the Property and mooting any issues involving the Owners.

[35] We are sensitive to the Owners' indignation at Wiper's attempt to obtain their ancestral home by less than scrupulous means. And we strongly condemn Wiper's efforts to deceive the trial court and frustrate the discovery process. But once Wiper finally withdrew its petition for tax deed, the Owners' counsel no longer had any basis for holding Wiper's feet to the fire, except perhaps to

---

[9] Wiper also argues that the fee award "impinged on [its] due process rights" because fees were not mentioned in the Hearing Order. Appellant's Br. at 23. Wiper made no such objection below, so this argument is waived. *Old Indiana LLC v. Montano ex rel. Montano*, 732 N.E.2d 179, 185 (Ind. Ct. App. 2000), *trans. denied* (2001).

[10] Likewise, whether Wiper should have been barred from participating in the next tax sale was also strictly between Wiper and the county.

pursue an independent claim, which they did not do. In taking additional steps (and generating additional fees) to deter future misconduct by Wiper, the Owners' counsel essentially acted as private attorneys general, i.e., "litigants who bring actions to protect important social policies or rights." *Town of St. John*, 751 N.E.2d at 659. Our supreme court refused to adopt the private attorney general doctrine as a basis for awarding fees in *Town of St. John*, *id*. at 664, and we must follow that precedent here. Consequently, we conclude that the trial court abused its discretion in awarding the Owners attorney's fees and costs incurred after February 25, 2013, when Wiper withdrew its petition for tax deed. Therefore, we reverse and remand with instructions to amend the Fees Order accordingly.[11]

## Section 3 – The Owners have waived any error regarding the trial court's failure to impose sanctions against Vivek.

[36] On cross-appeal, the Owners argue that the trial court erred in failing to impose sanctions against Vivek as Wiper's attorney. Nothing in the record before us indicates that the Owners requested such sanctions.[12] Therefore, we find any error waived and affirm the trial court on this issue. *See Tomahawk Vill. Apts. v.*

---

[11] Given our resolution of this issue, we need not address Wiper's argument that the trial court erred in reserving the issue of additional fees for future proceedings.

[12] *Cf.* Appellant's App. at 582 (Owners' proposed findings for December 2015 Order: "*Wiper* shall be required to pay all reasonable attorneys' fees and costs incurred by [Owners] in this action from and after November 14, 2011.") (emphasis added). There is no indication that the parties submitted proposed findings for the Fees Order.

*Farren*, 571 N.E.2d 1286, 1294 (Ind. Ct. App. 1991) ("On appeal, a party may not request relief for which he made no claim to the trial court.").

## Section 4 – The Owners have waived any error regarding the Hearing Order.

The Owners also argue that the trial court erred in deeming certain issues moot in its Hearing Order, but they fail to assert, let alone establish, that they were prejudiced thereby. Accordingly, we find any error waived and affirm on this issue as well. *See TeWalt v. TeWalt*, 421 N.E.2d 415, 420 (Ind. Ct. App. 1981) ("It is a well known rule of appellate practice that one who seeks to disturb a judgment has the burden of showing an erroneous ruling and resultant prejudice.").

Affirmed in part, reversed in part, and remanded.

Kirsch, J., and May, J., concur.