ATTORNEY FOR APPELLANT
Adam J. Sedia
Rubino, Ruman, Crosmer, Smith, Sersic & Polen
Dyer, Indiana

ATTORNEYS FOR AMICUS CURIAE
INDIANA TRIAL LAWYERS ASSOCIATION
Frederick R. Hovde
Nicholas C. Deets
Hovde Dassow & Deets LLC
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE
Robert J. Konopa
Mark D. Kundmueller
Tuesley Hall Konopa, LLP
South Bend, Indiana

ATTORNEYS FOR AMICUS CURIAE
DEFENSE TRIAL COUNSEL OF INDIANA
Robert F. Parker
Nancy Townsend
Burke Costanza & Carberry LLP
Merrillville, Indiana

Donald B. Kite
Gonzalez Saggio & Harlan LLP
Indianapolis, Indiana

_____

# In the
# Indiana Supreme Court

FILED
Dec 12 2012, 1:24 pm

CLERK
of the supreme court,
court of appeals and
tax court

_____

### No. 45S03-1206-CT-310

MARGARET KOSARKO,                                                          *Appellant (Plaintiff),*

v.

WILLIAM A. PADULA, ADMINISTRATOR OF THE ESTATE OF
DANIEL L. HERNDOBLER, DECEASED,

                                                                         *Appellee (Defendant).*

_____

Appeal from the Lake Superior Court, No. 45D04-0719-CT-268
The Honorable Gerald N. Svetanoff, Judge

_____

On Transfer from the Indiana Court of Appeals, No. 45A03-1012-CT-668

_____

**December 12, 2012**

**Dickson, Chief Justice.**

The plaintiff in this case, Margaret Kosarko, challenges the trial court's denial of her motion for prejudgment interest following a jury verdict awarding her monetary damages.  We re-

verse and hold that the Tort Prejudgment Interest Statute abrogates and supplants the common law prejudgment interest rules in cases covered by the statute.

On February 17, 2007, Kosarko filed a complaint for damages against Daniel Herndobler for injuries she allegedly sustained in an automobile collision involving Herndobler. When Herndobler subsequently passed away, Kosarko amended her complaint, substituting William Padula in his capacity as administrator of Herndobler's estate. On March 18, 2008, Kosarko offered to settle the lawsuit for $100,000, but no response was made by the defendant. The case was then tried before a jury, which, on March 24, 2010, found in favor of Kosarko and awarded her damages totaling $210,000. Kosarko then filed a motion asking the trial court to award her prejudgment interest in the amount of $79,627.40 pursuant to the Tort Prejudgment Interest Statute ("TPIS"), Ind. Code §§ 34-51-4-1 to -9, and attorneys' fees. The trial court denied Kosarko's motion for prejudgment interest because her damages were of an "ongoing and evolving nature" and thus "were not ascertainable within a time frame that justifies" an award of prejudgment interest. Appellant's App'x at 11–12. The Court of Appeals reversed and held that the trial court had abused its discretion in denying prejudgment interest, concluding that Kosarko's damages were sufficiently ascertainable. Kosarko v. Padula, 960 N.E.2d 810 (Ind. Ct. App. 2011). We granted transfer.

As we discuss in our decision today in Inman v. State Farm Mut. Auto Ins. Co., we review a trial court's denial of prejudgment interest under the TPIS for an abuse of discretion. ___ N.E.2d ___, ___ (Ind. 2012). The trial court abuses its discretion when its decision is "clearly against the logic and effect of the facts and circumstances before the court or if the court has misinterpreted the law." State v. Willits, 773 N.E.2d 808, 811 (Ind. 2002).

The availability and computation of prejudgment interest in Indiana has evolved over the years. Under the common law "Roper standard," announced in 1911, prejudgment interest can only be awarded by the trial court where the damages are "complete" and "ascertain[able] as of a particular time and in accordance with fixed rules of evidence and known standards of value." N.Y., Chi. & St. Louis Ry. Co. v. Roper, 176 Ind. 497, 507, 96 N.E. 468, 472 (1911) (quoting Fell v. Union Pac. Ry. Co., 88 P. 1003, 1007 (Utah 1907)); *accord* State Farm Fire & Cas. Ins.

Co. v. Graham, 567 N.E.2d 1139, 1142 (Ind. 1991) (affirming Roper); Travelers Indem. Co. v. Armstrong, 442 N.E.2d 349, 365–66 (Ind. 1982) (affirming Roper). Such interest is not permitted where the damages are "incomplete" because the damages may be "continuing and may even reach beyond the time of trial." Roper, 176 Ind. at 507, 96 N.E. at 472 (quoting Fell, 88 P. at 1006). Nor is such interest permitted where damages "are peculiarly within the province of the jury to assess at the time of the trial" because the damages are not readily determinable by the parties prior to the jury's verdict. *See id.* Accordingly, prejudgment interest is not available in "personal injury cases, cases of death by wrongful act, libel, false imprisonment, and cases where there is no standard of market or other value by which to measure the damages," nor in "cases where punitive damages may be assessed, nor to those where the amount of recovery is fixed by statute." *Id.* at 510, 96 N.E. at 473.

The General Assembly first provided for prejudgment interest in 1974 with the enactment of Indiana Code Sections 24-4.6-1-101 to -103. This statute allows a prevailing party to collect prejudgment interest from the time of a demand until the time of judgment at a rate of 8% per annum, unless the parties agree to a different rate. *Id.* The statute has been interpreted to supplement the Roper standard by allowing prejudgment interest in civil actions only where damages are complete and ascertainable. Thor Electric, Inc. v. Oberle & Assocs., Inc., 741 N.E.2d 373, 380–81 (Ind. Ct. App. 2000) (allowing 8% interest under Indiana Code Sections 24-4.6-1-102, -103 in a contract action where "the terms of the contract [made] the claim ascertainable"), *trans. not sought*, *disapproved on other grounds by* Inman, ___ N.E.2d at ___; Blue Valley Turf Farms, Inc. v. Realestate Mktg. & Dev., Inc., 424 N.E.2d 1088, 1090–91 (Ind. Ct. App. 1981) (stating that under the statute, damages must be "ascertain[able] as of a particular time in accordance with fixed rules of evidence and known standards of evaluation"), *trans. not sought*.

In 1988,[1] the legislature enacted the TPIS, which sets forth certain conditions that must be satisfied in order for a plaintiff to be eligible to receive prejudgment interest in "any civil ac-

---

[1] Pub. L. No. 149-1988, § 5, 1988 Ind. Acts 1860.

3

tion arising out of tortious conduct." Ind. Code § 34-51-4-1.[2] The crux of the statute is contained in two provisions: the first, Section 34-51-4-6, requires the *plaintiff* to make a qualified written offer of settlement[3] within one year of filing a claim in order to be eligible to receive prejudgment interest on any judgment arising from that claim; the second, Section 34-51-4-5, empowers the *defendant* to avoid prejudgment interest on any judgment award if the defendant makes a qualified offer of settlement[4] within nine months of the time at which the claim is filed. If a plaintiff makes a qualified settlement offer and the defendant fails to do so, the statute then allows the trial court to award prejudgment interest, *id.* § 34-51-4-7, and grants the court the discretion to determine the time period for accrual, *id.* § 34-51-4-8, and the rate of interest, *id.* § 34-51-4-9.

On appeal, Kosarko contends that the trial court abused its discretion when it applied the common law Roper standard to deny her request for prejudgment interest.[5] She and amicus curiae Indiana Trial Lawyers Association ("ITLA") maintain that the TPIS completely abrogates the application of the common law prejudgment interest rules in cases covered by the TPIS, and that because this is such a case, the trial court may not properly deny prejudgment interest on grounds that damages were of an "ongoing and evolving nature" and therefore not readily ascertainable. They argue instead that the trial court may only look to the statutory conditions imposed by the TPIS when determining whether or not to award prejudgment interest. The defendant, Padula, and amicus curiae Defense Trial Counsel of Indiana ("DTCI") wholly disagree and argue that the TPIS and the common law Roper standard are complementary legal rules designed to supple-

---

[2] The statute expressly excludes "claims against the patient's compensation fund," Ind. Code § 34-51-4-2, punitive damages claims, Ind. Code § 34-51-4-3, and claims against state and political subdivisions, Ind. Code § 34-51-4-4, from its purview.

[3] For a plaintiff's settlement offer to qualify under the TPIS, the offer must be filed "within one (1) year after a claim is filed in the court, or any longer period determined by the court to be necessary upon a showing of good cause," be in writing, be made to the party or parties against whom the claim is filed, "provide for payment of the settlement offer within sixty (60) days after the offer is accepted," and not exceed "one and one-third (1 1/3) of the amount of the judgment awarded." Ind. Code § 34-51-4-6.

[4] For a defendant's settlement offer to qualify under the TPIS, the offer must be made by "one (1) or more of the parties against whom the claim is filed," be filed "within nine (9) months after a claim is filed in the court, or any longer period determined by the court to be necessary upon a showing of good cause," be in writing, be made "to the party receiving a judgment," provide for "payment within sixty (60) days after the offer is accepted," and be "at least two-thirds (2/3) of the amount of the judgment award." Ind. Code § 34-51-4-5.

[5] The trial court relied on Wayne Twp. v. Lutheran Hosp. of Fort Wayne, Inc., 590 N.E.2d 1130 (Ind. Ct. App. 1992), *trans. denied*, for the same proposition as is contained in Roper.

4

ment one another such that the TPIS should be understood as establishing an additional set of disqualifying circumstances governing the availability of prejudgment interest in cases arising out of tortious conduct. We agree with Kosarko and hold that the TPIS abrogates and supplants the common law rules governing the availability of prejudgment interest in cases covered by the statute.

When resolving a conflict between the common law and a statute, we presume that the legislature did not intend to alter the common law unless the statute declares otherwise "in express terms or by unmistakable implication." Indianapolis Power & Light Co. v. Brad Snodgrass, Inc., 578 N.E.2d 669, 673 (Ind. 1991). Whether a statute abrogates the common law by "unmistakable implication" is a highly fact-intensive inquiry not specifically constrained to any uniform set of identifying characteristics. *See, e.g.*, Caesars Riverboat Casino, LLC v. Kephart, 934 N.E.2d 1120, 1123–24 (Ind. 2010) (holding that the statutes regulating riverboat gambling abrogated the common law by unmistakable implication because the "statutory scheme cover[s] the entire subject of riverboat gambling" and is "so incompatible [with the common law] that they cannot both occupy the same space"); Willits, 773 N.E.2d at 812–14 (holding that the statute governing the return of property seized during a search or arrest was not intended to allow monetary damages for damaged property because (1) the common law rule did not provide for, and the statute did not specifically reference, monetary damages; (2) by providing for the return of property without reference to monetary damages, the exclusion of monetary damages by the statute is implied; and (3) monetary damages caused by the tortious conduct of government actors was provided for in a separate statute); Forte v. Connerwood Healthcare, Inc., 745 N.E.2d 796, 800 (Ind. 2001) (holding that the Child Wrongful Death Statute precluded any award of punitive damages available under the common law for the death of a child because the statute "contained an exclusive list of damages recoverable" which does not include punitive damages and thus by implication intended to exclude such damages); Hinshaw v. Bd. of Comm'rs of Jay Cnty., 611 N.E.2d 637, 640 (Ind. 1993) (holding that the Tort Claims Act did not confer tort immunity on government actors where both a government actor and a non-governmental third party contribute to a loss because the "general pattern" of the statute indicates that the legislature only intended to grant immunity where the loss results entirely from the action of a non-governmental third party); N. Ind. Pub. Serv. Co. v. Citizens Action Coal. of Ind., 548 N.E.2d 153, 159–61

5

(Ind. 1989) (holding that the Public Service Commission Act did not abrogate the common law right to receive interest on monetary judgments for the return of utility fees owed to a ratepayer by a public utility because "there [was] nothing in [the] general regulatory scheme that is irreconcilable" with the common law right to interest, given that the statute was intended only to regulate "the way in which the utility operates, not the rights of consumers"). Where a statute abrogates the common law, it "must be strictly construed" so that only those portions of the common law which the legislature specifically intended to address are modified. *See* Indianapolis Power & Light Co., 578 N.E.2d at 673.

The Court of Appeals has considered the interplay of the TPIS and the common law on several occasions and, with one exception,[6] concluded that the statute abrogates the common law prejudgment interest rules in cases falling within its scope. Gregory & Appel Ins. Agency v. Phila. Indem. Ins. Co., 835 N.E.2d 1053, 1065 (Ind. Ct. App. 2005) (holding that the TPIS "covers the entire subject of the conditions for awarding prejudgment interest in tort cases and was clearly designed as a substitute for the common law"), *trans. denied*; Simon Prop. Grp., L.P. v. Brandt Constr., Inc., 830 N.E.2d 981, 994 (Ind. Ct. App. 2005) ("In our view, in passing this statute the legislature intended to preempt common law prejudgment interest in tort cases. To hold otherwise would be to render the statute and its requirements virtually meaningless—a party who failed to fulfill the statute's requirements could merely turn to the common law for relief."), *trans. denied*; *accord* Hanson v. Valma M. Hanson Revocable Trust, 855 N.E.2d 655, 665 (Ind. Ct. App. 2006), *trans. not sought*; Clary v. Lite Machs. Corp., 850 N.E.2d 423, 442 (Ind. Ct. App. 2006), *trans. not sought*; *see also* Loudermilk v. Jet Credit Union, No. 49A02-1006-PL-665, 2011 WL 5927428, *2–*3 (Ind. Ct. App. Nov. 29, 2011) (holding that failure to comply with condition of TPIS was fatal to claim for prejudgment interest in action for conversion), *trans. not sought*; *c.f.* Van Winkle v. Nash, 761 N.E.2d 856, 860–61 (Ind. Ct. App. 2002) (holding that award of prejudgment interest under TPIS does not require absence of disputed issues as

---

[6] In Lumbermens Mut. Cas. Co. v. Combs, 873 N.E.2d 692, 724–25 (Ind. Ct. App. 2007), *trans. denied*, the Court of Appeals reversed a trial court's award of prejudgment interest for a bad faith breach of contract claim because the jury's verdict was general and did not specify the elements of the plaintiff's damages and thus the court could not have determined if any portion of those damages were ascertainable in accordance with the Roper standard. Notably, the court in Lumbermens did not specifically consider the abrogation issue. The court only assumed that the common law Roper standard applied based on general statements about prejudgment interest contained in earlier cases. *Id.* To the extent that Lumbermens conflicts with our decision today, it is disapproved.

6

required by common law prejudgment interest rules), *trans. not sought.*

The plain language of the TPIS makes no reference to the common law rules governing prejudgment interest, including the common law requirement that prejudgment interest can be awarded only where the damages are complete and ascertainable. But the comprehensive nature of the TPIS and the codification of two common law rules convince us that the legislature intended the statute to be the exclusive source governing the award of prejudgment interest in cases falling within its ambit. Not only does the statute establish preconditions for an award of prejudgment interest, Ind. Code §§ 34-51-4-5, -6, it also affirmatively authorizes the court to award prejudgment interest as part of a judgment, *id.* § 35-51-4-7, specifies the types of actions to which the statute applies and does not apply, *id.* §§ 34-51-4-1 to -4, and limits the time period and rate of any prejudgment interest awarded under the statute, *id.* §§ 34-51-4-8, -9. The statute spans the entire subject of prejudgment interest and is capable of being implemented without reference to the common law. Further, both Indiana Code Section 35-51-4-7 (authorizing the court to award prejudgment interest as part of a judgment) and Section 34-51-4-3 (exempting punitive damages from prejudgment interest) codify rules that already existed at common law for more than one hundred years. *See* Roper, 176 Ind. at 509–510, 96 N.E. at 473. Were the TPIS merely supplemental in nature, as the defendant and amicus curiae DTCI contend, then these provisions would be unnecessary since any matters not addressed by the statute would be subject to the common law rules. In light of the wide-ranging treatment of the subject matter, considered in conjunction with the fact that the TPIS expressly adopts only selected portions of the common law, we conclude that the TPIS unmistakably implies the legislature's intent to substitute the statute for the common law with respect to cases falling within the scope of the TPIS.[7]

As noted above, the trial court abuses its discretion when it "misinterpret[s] the law." Willits, 773 N.E.2d at 811. A trial court has broad discretion under the TPIS to award or deny prejudgment interest. However, it must support its determination with findings consistent with

---

[7] In Whited v. Whited, 859 N.E.2d 657 (Ind. 2007), we applied both Section 34-51-4-8(b) of the TPIS *and* the common law prejudgment interest rules in reviewing the denial of prejudgment interest under Indiana Code Section 31-16-12-2, which permits "interest" on delinquent child support payments. 859 N.E.2d at 664–65. In that case, we did not consider whether the TPIS was intended to abrogate the common law prejudgment interest rules. To the extent that our holding in Whited differs from our conclusion in this case, it is disapproved.

the statute, not the abrogated common law standard. In light of our holding, we must conclude that the trial court abused its discretion in applying the common law prejudgment interest rule requiring the prevailing party's damages to be complete and ascertainable. We therefore reverse the judgment and remand the case to the trial court for a prejudgment interest determination consistent with this opinion.

While we agree with the majority of the Court of Appeals that the trial court abused its discretion in denying Kosarko's motion for prejudgment interest, Kosarko, 960 N.E.2d at 813, we depart with the Court of Appeals in our reasoning and in our remedy. On transfer, Padula asserts that the Court of Appeals erred when it remanded the case to the trial court for entry of an order awarding Kosarko the full amount of prejudgment interest she requested. Appellee's Trans. Br. at 8. We agree. Because the trial court denied Kosarko's motion for prejudgment interest on the prior common law grounds that her damages were of an ongoing and evolving nature and were not readily ascertainable within an appropriate time frame, it never reached the issue of whether Kosarko's requested prejudgment interest was proper under the TPIS. We elect to remand this issue to the trial court for the exercise of its discretion under the TPIS.[8] In exercising its discretion, the trial court should consider the objectives of the statute: to encourage settlement, to incentivize expeditious resolution of disputes, and to compensate the plaintiff for the lost time value of money arising from unreasonable delay. *See* Johnson v. Eldridge, 799 N.E.2d 29, 33 (Ind. Ct. App. 2003) (citing Cahoon v. Cummings, 734 N.E.2d 535, 547 (Ind. 2000)), *trans. denied*.

**Conclusion**

We hold that the Tort Prejudgment Interest Statute abrogates and supplants the common law prejudgment interest rules in cases covered by the statute and also hold that the plaintiff's motion for prejudgment interest should have been evaluated as provided in the statute, and not on abrogated common law. We remand the case to the trial court for reconsideration of the motion accordingly. On remand, the trial court has broad discretion to determine whether to award pre-

---

[8] The TPIS grants discretion to the "court," which, as defined under Indiana Code Section 34-46-2-31, refers to "the court awarding a judgment," or, as here, the trial court. *See also* Inman, ___ N.E.2d at ___ n.6.

judgment interest, what interest rate to use, what time period to use, and whether to calculate interest on the full $210,000 awarded by the jury, or on the amount of $100,000, representing insurance liability coverage limits, that was deposited with the clerk and released to Kosarko.[9] Appellant's App'x at 2–3. The trial court's discretion is restricted only by the limits expressly enacted by the legislature in the TPIS.

Rucker, David, Massa, Rush, JJ., concur.

---

[9] $100,000 reflects the policy limit of the insurance policy held by Daniel L. Herndobler, against whose estate judgment was entered at trial. Appellant's Br. at 2. In another case handed down today, we hold that prejudgment interest can be awarded in excess of an insured's UIM policy because prejudgment interest is a "collateral litigation expense imposed at the discretion of the trial court as a penalty for the defendant's failure to conduct litigation consistent with the legislatively ordained policy of expediency." Inman, ___ N.E.2d at ___. We extend that reasoning to situations involving a defendant's insurance policy, as here, but again reiterate that it is completely within the discretion of the trial court.