ATTORNEYS FOR APPELLANT
David J. Beach
Kirk D. Bagrowski
Hammond, Indiana

ATTORNEY FOR APPELLEE
Timothy S. Schafer
Merrillville, Indiana

# In the
# Indiana Supreme Court

FILED

Dec 12 2012, 1:40 pm

CLERK
of the supreme court,
court of appeals and
tax court

No. 45S04-1212-CT-675

HASSAN ALSHEIK,

*Appellant (Defendant below),*

v.

ALICE GUERRERO, INDIVIDUALLY
AND AS ADMINISTRATRIX OF THE ESTATE
OF I. A., DECEASED,

*Appellee (Plaintiff below),*

Appeal from the Lake Superior Court, Cause No. 45D11-0602-CT-00031
The Honorable Jeffery J. Dywan, Judge

On Petition to Transfer from the Indiana Court of Appeals, No. 45A04-1011-CT-680

**December 12, 2012**

**David, Justice.**

In this companion case to Wisner v. Laney,[1] Inman v. State Farm,[2] and Kosarko v. Padula,[3] all decided today, we discuss the issue of prejudgment interest, specifically the statutory requirements of Indiana Code section 34-51-4-6, and the discretionary nature of an award of prejudgment interest.

---

[1] No. 71S03-1201-CT-7, _____ N.E.2d _____ (Ind. December 12, 2012)
[2] No. 41S01-1108-CT-515, _____ N.E.2d _____ (Ind. December 12, 2012)
[3] No. 45S03-1206-CT-310, _____ N.E.2d _____ (Ind. December 12, 2012)

**Facts and Procedural History**

I.A. was referred to Dr. Hassan Alsheik for treatment of an undescended left testicle. On June 5, 2000, when I.A. was thirteen months old, he underwent surgery performed by Dr. Alsheik in Munster, Indiana. I.A.'s mother, Alice Guerrero, testified that following surgery, Dr. Alsheik told her that "there was a little complication, but that everything was okay. Everything was fine." I.A. was released from the hospital that afternoon.

The morning after surgery, I.A. had a fever. At 3:30 a.m. on the morning of June 7, 2000, I.A. woke up with a temperature and was fussy. I.A. woke up again at 6:30 a.m. and Guerrero fed him a bottle. At 7:45, Guerrero checked on I.A., noticed he was not moving, and noticed brown vomit around his face. I.A. was rushed to the hospital and pronounced dead at 8:16 a.m.

The following day, the Lake County Coroner's pathologist conducted a gross inspection of the body and then performed an autopsy on I.A. Based on his gross inspection, the coroner found that

> There is a recent surgical incision wound which is closed and intact over the left inguinal area; and there is an ecchymosis and mild edema related to postoperative changes.
>
> There is ecchymosis related to postoperative changes over the scrotum which contains both testicles.
>
> There is also a small wound with sutures over the left side of the bottom of the scrotum.

The cause of death was listed as "vascular collapse undetermined cause."

In May 2002, Guerrero initiated a medical malpractice claim against Dr. Alsheik by filing her proposed complaint with the Indiana Department of Insurance. On November 30, 2005, the medical review panel unanimously concluded,

> The evidence does not support the conclusion that [Dr. Alsheik] failed to meet the applicable standard of care as charged in the complaint regarding his surgery on the patient; however, there is a material issue of fact, not requiring expert opinion, hearing on liability for consideration by the court or jury as it related to the phone

2

conversation between [Guerrero] and the office of [Dr. Alsheik] on September 6, 2000.

Guerrero hired pathologist James Bryant (Dr. Bryant) who performed a second autopsy on I.A.'s body in March 2003. During the autopsy, Dr. Bryant focused on the incision and surgical site of I.A.'s groin area. Dr. Bryant testified that I.A.'s cause of death was vascular collapse due to sepsis resulting from a kink of the left spermadic cord, and cut off blood supply to the left testicle and scrotum due to the rotation or obstruction of the left spermatic cord.

On February 8, 2006, Guerrero filed her complaint of medical malpractice against Dr. Alsheik and Community Hospital.[4] A jury trial was conducted over two weeks in September and October 2010. The jury returned a verdict in favor of Guerrero in the amount of $1,165,000. After a brief hearing, the trial court denied Guerrero's request for pre-judgment interest.

Dr. Alsheik raises three issues on appeal: (1) whether the trial court abused its discretion by admitting the evidence and results of a second autopsy performed by Guerrero's medical expert without prior notification to Dr. Alsheik; (2) whether the trial court abused its discretion when it allowed Guerrero's pathologist to testify as an expert witness; and (3) whether the trial court abused its discretion when it admitted the post-mortem photographs of the victim. On cross-appeal, Guerrero raises one issue, whether the trial court erred in denying Guerrero's request for prejudgment interest. We hereby grant transfer. We summarily affirm the excellent analysis of the Court of Appeals regarding the second autopsy, expert witness testimony, and admission of photographs. We write today on pre-judgment interest.

## Prejudgment Interest

On cross-appeal, Guerrero contends the trial court improperly denied her request for prejudgment interest. This case involves a similar analysis, and involves the same plaintiff's counsel, as another case we are deciding today, Wisner v. Laney.

Guerrero filed her lawsuit alleging medical malpractice on May 29, 2002, the same day she filed her claim, as required by law, with the Indiana Department of Insurance. On January 9,

---

[4] Community Hospital was dismissed with prejudice and is no longer a party to the case.

2003, upon her own motion, the trial court dismissed her lawsuit without prejudice. Thereafter, on April 21, 2003, Guerrero's counsel sent the following letter to Dr. Alsheik's counsel:

> As a follow-up to our telephone conversation, please be advised my client has authorized me to tender a settlement offer in the amount of the minimum structure of $250,000.00 with a present value of $187,001.00 which would qualify us to proceed into the Patients Compensation Fund pursuant to I.C. [§] 34-18-14-4. Would you kindly talk to Dr. Alsheik to obtain his consent and approval and in return, we will naturally agree to keep the terms of the settlement confidential so as not to cause any unnecessary embarrassment or inconvenience to your client.
>
> You are hereby advised that said offer shall remain open for fifteen (15) days from the date of this letter and thereafter, will be withdrawn and not reinstated and we will proceed to a trial on the merits for the wrongful death of my client's minor son. I will await your response.

On February 8, 2006, Guerrero filed a new lawsuit against Dr. Alsheik in the Lake Superior Court.

The letter referenced above and the letter sent by counsel in <u>Wisner</u> are similar.[5] Both letters intended to invoke Indiana Code section 34-51-4-6. A prerequisite to the recovery of

---

[5] Laney's counsel sent the following settlement letter:

As a follow-up to our deposition of Dr. Wisner, it appears that there is liability against the clinic as well as Dr. Wisner for failure to properly diagnose Mrs. Laney's condition and failing to properly treat her on Mach 9, 2001 resulting in a stroke three (3) days later and substantial and irreversible permanent impairment, specifically a stroke to the left side of her brain with resulting impairment to her right upper and lower extremities as well as impairment to her cognitive functions.

The clinic, as well as Dr. Wisner, can each be held liable for $250,000.00 plus pre-judgment interest up to four (4) years according to statute and case law for a total amount of $660,000.00. Please be advised my client has authorized me to settle this matter for a structured settlement in the amount of $250,000.00 with a present value of $187,001.00 which is the minimum structured settlement permitted to allow my client to proceed to the Patients' Compensation Fund. I think it would be in the best interest of all parties to amicably resolve this matter without a trial on the merits since it is likely that Mrs. Laney would obtain a substantial verdict in light of her permanent injuries and the conspicuously missing medical records of the clinic regarding March 9, 2001 day in question.

Would you kindly discuss this matter with your clients as well as their insurance carrier and advise me as to your position within the next thirty (30) days. If we are able to resolve this matter at this time, it will avoid any further inconvenience to Dr .Wisner and eliminate her necessity to travel from Baltimore, Maryland to Indiana for a trial on the merits and thereby avoid any further litigation expense. I will await your response.

4

prejudgment interest is a settlement letter. The purpose of the settlement letter is to afford the adverse party "notice of a claim and provide them with an opportunity to engage in meaningful settlement." Wisner, slip op. at 15. Both settlement letters included time-limiting language. In the present case, a fifteen-day period of time to settle was given compared to Wisner where a thirty-day period of time to settle was given. As we write today in Wisner v. Laney, "the better practice for lawyers in the future would be to cite the statute in the settlement letter and make it very clear that the letter is intended to invoke the statute, including the sixty-day settlement window and the possibility of prejudgment interest." Slip op. at 14–15. Regardless, we find that this letter met the minimum threshold for time-limiting language as set forth in the statute. However, not only must the settlement letter contain the appropriate language, it must be timely sent.

In Wisner we determined that the particular letter was untimely for two reasons. First, it was sent two years and five months after the original claim was filed, in violation of Indiana Code section 34-51-4-6. Slip op. at 15. Second, no subsequent settlement letter was sent after the dismissal of the first lawsuit and prior to the filing of the second lawsuit. Id. The critical difference in the two cases is the timing of the settlement letter. In Wisner, the settlement letter satisfied the statutory requirements for content, but was untimely sent. We hold in the present case the letter was timely sent. In May 2002, Guerrero filed a lawsuit. That lawsuit was dismissed in January 2003 on her own motion. In April 2003, the settlement letter was sent to Dr. Alshiek's counsel. That settlement letter was sent prior to the February 2006 filing of the new complaint with the trial court. Consistent with our holding in Wisner and contrary to the circumstances of the settlement letter in Wisner, this settlement letter met all the requirements in Indiana Code section 34-51-4-6. The time frame comports with our decision today in Wisner.

In the present case, at the trial court level, prejudgment interest was denied on grounds that the settlement letter did not comply with the requirements of the statute. Since we hold that the settlement letter was in compliance with Indiana Code section 34-51-4-6, we remand the case to the trial court for consideration of prejudgment interest.

---

Wisner v. Laney, slip op. at 12.

Our opinion today in Inman v. State Farm lays out the analysis to be used in considering whether to award prejudgment interest. The prejudgment interest statute permits the trial court to award prejudgment interest, but does not require an award of prejudgment interest. *See* Ind. Code § 34-51-4-7 ("court *may award* prejudgment interest as part of a judgment."); Id. § 34-51-4-8 ("*If the court awards prejudgment interest . . . .*") (emphasis added). We review a trial court's ruling on a motion for prejudgment interest under the prejudgment interest statute for an abuse of discretion. Inman, slip op. at 3. The trial court abuses its discretion when its decision is "clearly against the logic and effect of the facts and circumstances before it." Turner v. State, 953 N.E.2d 1039, 1045 (Ind. 2011). The prejudgment interest statute grants the trial court "broad discretion to determine when an award of prejudgment interest is warranted." Inman, slip op. at 6. In our opinion today in Inman, the trial court's order denying Inman's request for prejudgment interest was sufficient when it stated simply, "Request for interest denied." Inman, slip op. at 9. However, the trial court abuses its discretion if it has "misinterpreted the law," State v. Willits, 773 N.E.2d 808, 811 (Ind. 2002), which it has done in the present case. As this court wrote in Kosarko v. Padula, slip op. at 7–8, also decided today, "A trial court has broad discretion under the [prejudgment interest statute] to award or deny prejudgment interest. However, it must support its determination with findings consistent with the statute."

## Conclusion

We summarily affirm the Court of Appeals opinion relating to the second autopsy, the expert witness, and the admission of photographs. Its analysis was detailed and correct. We reverse the trial court's decision to deny Guerrero prejudgment interest based upon a defective settlement letter. As we have held, Guerrero's settlement letter did comply with Indiana Code section 34-51-4-6. However, the award of prejudgment interest is neither automatic nor required, and is left to the discretion of the trial court. We remand with instructions to the trial court to determine whether or not Guerrero should be entitled to prejudgment interest.

Dickson, C.J., and Rucker, Massa, and Rush, JJ., concur.