

ATTORNEYS FOR APPELLANT

Anne K. Ricchiuto
Brian J. Paul
Matthew C. Olsen
Indianapolis, Indiana

David A. Lewis
Jeffersonville, Indiana

ATTORNEYS FOR APPELLEES:
OUTFRONT MEDIA, LLC AND
DAVID WATKINS

Alan S. Townsend
Bradley M. Dick
Indianapolis, Indiana

ATTORNEY FOR APPELLEES:
NO MOORE, INC. AND THE
SCHLOSSER FAMILY LIMITED
PARTNERSHIP

Michael M. Maschmeyer
Jeffersonville, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| River Ridge Development Authority, <br><br> *Appellant-Plaintiff,* <br><br> v. <br><br> Outfront Media, LLC, David Watkins, No Moore, Inc., The Schlosser Family Limited Partnership, The Town of Utica, and the Utica Board of Zoning Appeals, <br><br> *Appellees-Defendants.* | July 15, 2019 <br><br> Court of Appeals Case No. 18A-PL-2347 <br><br> Appeal from the Clark Circuit Court <br><br> The Honorable Richard Striegel, Senior Judge <br><br> Trial Court Cause No. 10C02-1709-PL-99 |

**Tavitas, Judge.**

# Case Summary

River Ridge Development Authority ("River Ridge") appeals the trial court's order granting attorney fees to Outfront Media, LLC ("Outfront"), David Watkins, No Moore, Inc. ("No Moore"), the Schlosser Family Limited Partnership ("the Schlosser Family"), the Town of Utica, and the Utica Board of Zoning Appeals ("Utica BZA") (collectively, "Appellees"). We reverse.

# Issue

River Ridge raises numerous issues, which we revise and restate as whether the trial court's award of attorney fees to Appellees is clearly erroneous.

# Facts

River Ridge is "a military reuse authority and governmental authority duly formed and existing under Indiana Code sections 36-7-30-1, et seq." Appellant's App. Vol. IV p. 14. River Ridge "oversees construction and development of the River Ridge Commerce Center," a business and manufacturing park near the Ohio River and State Road 265 in Clark County, Indiana. *Id.* at 15.

Outfront is a company that conducts an outdoor advertising business. In December 2015, Outfront sought to construct seven billboards on property owned by No Moore and the Schlosser Family near the property owned by

River Ridge. At some point, the Utica Town Council President, Steve Long, approved Outfront's permit applications in an undated memo. On October 11, 2016, the Utica Town Council's attorney informed the Council that they needed to "ratify" Long's signature on the permits, which it did. Appellant's App. Vol. IV p. 164. In March 2017, Watkins, an employee of Outfront, filed outdoor advertising sign permit applications with the Indiana Department of Transportation ("INDOT"). In April 2017, INDOT approved the applications for the seven permits filed by Watkins.

[5] During the Fall of 2016 and again in the Fall of 2017, River Ridge contacted Outfront to discuss the possibility of Outfront constructing signage at the entrance to River Ridge's facility. Appellees claim that River Ridge was interested in a billboard, while River Ridge claims it was interested in a "monument sign, some type of signage strictly for River Ridge." Tr. Vol. II p. 84.

[6] In August 2017, the Kentuckiana Regional Planning and Development Agency[1] sent information to INDOT to nominate a portion of State Road 265 as a scenic byway. River Ridge, along with several other groups and governmental agencies, supported the nomination.

---

[1] The Kentuckiana Regional Planning & Development Agency is "an association of local governments in a nine-county region of southern Indiana and north central Kentucky." http://www.kipda.org/ (last visited June 27, 2019). It provides "regional planning, review and technical services in the areas of public administration, social services and transportation as well as community ridesharing programs." http://www.kipda.org/About_KIPDA.aspx (last visited June 27, 2019).

[7] In September 2017, River Ridge filed a petition with the Utica BZA and challenged the validity of the permit issued by the Utica Town Council for the construction of the seven billboards ("BZA Petition"). River Ridge alleged that the permits violated the Utica Zoning Ordinance and that the Town Council President lacked authority to issue the permits. At a November 14, 2017 hearing before the Utica BZA, the BZA refused to hear the petition because the BZA was "not in the position to make or review or modify any determination made by the executive of this town." Appellant's App. Vol. V p. 97.

[8] Also in September 2017, River Ridge filed a complaint with the Clark County Circuit Court against Outfront, Watkins, No Moore, the Schlosser Family, the Town of Utica, and INDOT regarding the billboards. The complaint contained four counts: (1) a claim for declaratory judgment that neither the billboards nor the INDOT permits were allowed; (2) a claim for public nuisance caused by the billboards; (3) a claim for private nuisance caused by the billboards; and (4) a request for a permanent injunction. Appellees filed multiple motions to dismiss, and River Ridge subsequently raised an issue regarding a conflict of interest for the Town of Utica's counsel.

[9] Before the trial court ruled on the motions to dismiss and after the Utica BZA refused to hear the BZA Petition, River Ridge filed a motion to amend its complaint to add certain claims and dismiss other claims, which the trial court granted. In its December 11, 2017 order, the trial court stated:

> (a) River Ridge's First Amended Complaint and Verified Petition for Judicial Review (the "Amended Complaint"), attached to

Plaintiff's Motion as Exhibit 1, is hereby deemed filed as of the date of this Order; (b) Plaintiff's prior claims of public and private nuisance (Counts II and III of Plaintiff's initial Complaint) are hereby dismissed, with each party to bear its own attorneys' fees and costs related to such voluntarily dismissed claims; (c) Defendants the Indiana Department of Transportation ("INDOT") and Joe McGuinness, as Commissioner of INDOT, are hereby dismissed from this litigation without prejudice, with each party to bear its own attorneys' fees and costs; and (d) all remaining Defendants shall respond to the Amended Complaint within thirty (30) days after conducting a mediation of this matter, which mediation is currently being scheduled by the parties.

Appellant's App. Vol. V pp. 98-99.

[10] The amended complaint included claims against Outfront, Watkins, No Moore, the Schlosser Family, the Town of Utica, and the Utica BZA for: (1) declaratory judgment that the billboards were not allowed; (2) a request for a permanent injunction; (3) a verified petition for judicial review of the BZA; and (4) a verified action for mandate against the Utica BZA. The Appellees then filed motions to dismiss the amended complaint.

[11] On April 30, 2018, the Indiana Scenic Byway Committee approved an application for S.R. 265 to become a scenic byway. A scenic byway designation would apparently prevent additional billboards from being constructed. On the same day, River Ridge filed a notice of voluntary dismissal of the amended complaint with prejudice pursuant to Indiana Trial Rule 41(A)(1)(a).

[12] Outfront, Watkins, No Moore, the Schlosser Family, and the Town of Utica then filed motions for attorney fees. Outfront requested $149,918.01 in attorney fees; the Town of Utica requested $51,824.52; and No Moore/the Schlosser Family requested $35,698.10, for a total of $237,440.63 in attorney fees.[2] After additional briefing on the matter, the trial court held a hearing at which evidence was presented on the motion for attorney fees. The parties then submitted proposed orders, with the Appellees filing one joint proposed order. The trial court then entered findings of fact and conclusions of law granting Appellees' motions for attorney fees and ordered River Ridge to pay $237,440.63 in Appellees' attorney fees. River Ridge now appeals.

## Analysis

[13] The trial court here entered findings of fact and conclusions of law pursuant to Indiana Trial Rule 52(A). In reviewing findings made pursuant to Trial Rule 52, we first determine whether the evidence supports the findings and then whether findings support the judgment. *K.I. ex rel. J.I. v. J.H.*, 903 N.E.2d 453, 457 (Ind. 2009). On appeal, we "shall not set aside the findings or judgment unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses." *Id.*; Ind. Trial Rule 52(A). A judgment is clearly erroneous when there is no evidence supporting the findings or the findings fail to support the judgment. *K.I.*, 903 N.E.2d at 457.

---

[2] River Ridge's attorney fees were more than $400,000.00.

A judgment is also clearly erroneous when the trial court applies the wrong legal standard to properly found facts. *Id.*

[14] We note that the trial court adopted Appellees' proposed findings of fact and conclusions of law verbatim. "This practice weakens our confidence as an appellate court that the findings are the result of considered judgment by the trial court." *Cook v. Whitsell-Sherman*, 796 N.E.2d 271, 274 n.1 (Ind. 2003). It is not uncommon or per se improper for a trial court to enter findings that are verbatim reproductions of submissions by the prevailing party. *Cty. of Lake v. Pahl*, 28 N.E.3d 1092, 1100 (Ind. Ct. App. 2015), *trans. denied*. "Although we by no means encourage the wholesale adoption of a party's proposed findings and conclusions, the critical inquiry is whether such findings, as adopted by the court, are clearly erroneous." *Id.*

[15] We have significant concerns about some of the trial court's findings. There was no weighing of the evidence demonstrated in the findings. Rather, many of the findings are merely unsupported accusations, argumentative, and inappropriate. Although the trial court has wide discretion in weighing evidence and entering findings, the completely one-sided nature of the findings of fact and conclusions of law in this case gives us pause.[3]

---

[3] We recognize that the parties and attorneys involved here appear to have significant personal animosity. *See, e.g.*, Tr. Vol. II p. 111 (arguing that a letter from River Ridge's attorney was "an attempt to harass Utica. Probably an attempt to crush them . . . ."); *Id.* at 121 (arguing that the "bad faith ranking" was "a 10"); *Id.* at 140 ("Now we know from the time that we've spent here today that the Defendants are really irritated with River Ridge and they're even emotional about having gone through this process . . . ."); *Id.* at 169 ("We're filing pleadings in what has to be the worst bad faith in the last ten years by an appointed group of people

For example, the trial court found:

> The timing of RRDA's voluntary dismissal confirms that the purpose of this lawsuit was to buy time for the approval of the scenic byway designation and cause Outfront, No Moore/Schlosser, and the Town to incur substantial expense in defending and protecting their rights and interests. The timing of the dismissal, with prejudice, is more than coincidental. It is disconcerting.

Appellant's App. Vol. II p. 28. This finding implies that River Ridge knew the scenic byway designation (which it did not request) would be approved by the Indiana Scenic Byway Commission before the litigation was concluded. There is no evidence in the record, however, that River Ridge had any way of knowing the designation would be approved or when it would be approved.

The trial court also found: "The fact that [River Ridge] dismissed its lawsuit with prejudice the very same day the scenic byway commission recommended approval of the byway designation, despite the motions to dismiss being fully briefed, demonstrates that [River Ridge] knew its lawsuit was without merit." *Id.* It seems clear that River Ridge dismissed its amended complaint on the same day as the Scenic Byway Commission recommended approval of the designation because such a designation would prevent further billboards from being constructed along the highway. Why would River Ridge continue

against elected officials."); *Id.* at 173 ("I'm gonna forgive Mr. Maschmeyer and unhear him to the extent maybe he might have called me a liar in open court.").

litigation to prevent the billboards from being constructed when a scenic byway designation would accomplish the same result? The trial court's finding that the dismissal demonstrates that River Ridge knew its lawsuit was without merit is simply unsupported by any evidence.

[18] In another example, the trial court found:

> It also is clear that [River Ridge] knew that Watkins was acting solely as an employee of Outfront. Watkins' email with [River Ridge] identified him as an employee of Outfront. (Outfront Hearing Ex. 1-3.) [River Ridge] met with Watkins to discuss advertising on Outfront's Billboards. This Court finds that [River Ridge] naming Watkins personally as Defendant, despite knowing that he acted solely as an employee of Outfront, was obdurate and for the purpose of harassment.

*Id.* at 23. The finding fails to mention that the INDOT permits were issued to Watkins (not Outfront). We find that the trial court's findings of fact are clearly erroneous.

[19] We now address the trial court's conclusions of law. River Ridge challenges the trial court's authority to order an award of attorney fees to Appellees and, alternatively, the amount of attorney fees awarded by the trial court.[4] "[T]here

---

[4] "In determining a reasonable amount of attorney's fees, consideration should be given to the nature and difficulty of the litigation; the time, skill, and effort involved; the fee customarily charged for similar legal services; the amount involved; the time limitations imposed by the circumstances; and the result achieved in the litigation." *R.L. Turner Corp. v. Wressell*, 44 N.E.3d 26, 39 (Ind. Ct. App. 2015). Because we conclude that the trial court erred by awarding attorney fees here, we do not reach the issue of whether the amount of attorney fees awarded was reasonable.

are two basic attorney fee schemes: the English rule ('loser pays') and the American rule ('every man for himself')." *State Bd. of Tax Comm'rs v. Town of St. John*, 751 N.E.2d 657, 658 (Ind. 2001). Advocates of the American Rule note:

> [S]ince litigation is at best uncertain one should not be penalized for merely defending or prosecuting a lawsuit, and [ ] the poor might be unjustly discouraged from instituting actions to vindicate their rights if the penalty for losing included the fees of their opponents' counsel. Also, the time, expense, and difficulties of proof inherent in litigating the question of what constitutes reasonable attorney's fees would pose substantial burdens for judicial administration.

*Town of St. John*, 751 N.E.2d at 658 (quoting *Fleischmann Distilling Corp. v. Maier Brewing Co.*, 386 U.S. 714, 718, 87 S. Ct. 1404 (1967)). Indiana has consistently followed the American Rule. *Loparex, LLC v. MPI Release Techs., LLC*, 964 N.E.2d 806, 816 (Ind. 2012). "Thus, in the absence of *statutory authority* or an *agreement* between the parties to the contrary—or an *equitable exception*—a prevailing party has no right to recover attorney fees from the opposition." *Id.* (footnote omitted) (emphasis added).

[20] The most common equitable exceptions to the American Rule are:

> 1) The "obdurate behavior" exception, in which courts impose costs upon defendants as a punishment for bringing frivolous actions or otherwise acting in bad faith.
>
> 2) The "common fund" exception, in which an award benefits members of an ascertainable class, and the court reimburses the prevailing litigant's attorney fees out of that pool of money to prevent the unjust enrichment of free riders.

3) The "private attorney general" exception, where courts award fees to litigants who bring actions to protect important social policies or rights.

*Town of St. John*, 751 N.E.2d at 658-59 (internal citations omitted). Indiana, however, has rejected the private attorney general exception, and the common fund exception is inapplicable here. *Id.* at 664.

[21] The trial court concluded it had authority to award attorney fees to Appellees as follows:

> 2. RRDA also contends that this Court does not have authority to assess costs and attorneys' fees. This Court disagrees and concludes that it has three (3) independent bases for assessing costs and attorneys' fees against RRDA, and each supports sanctioning RRDA.

> 3. First, this Court has statutory authority to award costs and attorneys' fees. *See* Ind. Code § 34-52-1-1; *D.S.I. v. Natare Corp.*, 742 N.E.2d 15, 24 (Ind. Ct. App. 2000) (concluding that party was prevailing party when "the litigation culminated successfully for Natare in a judicial order that altered the litigants' legal relationship in a way favorable to Natare"); *Ilagan v. McAbee*, 634 N.E.2d 827, 829 (Ind. Ct. App. 1994) ("A dismissal with prejudice is a dismissal on the merits. A dismissal with prejudice is conclusive of the rights of the parties and is res judicata as to any questions which might have been litigated.") (internal citation omitted).

> 4. Second, this Court has inherent authority to fashion an equitable remedy that is complete and fair to all parties, especially those parties forced to unnecessarily incur substantial expense to protect their rights and interests in response to

meritless litigation. The Indiana Supreme Court has long held that Indiana courts have the equitable power "to prevent vexatious litigation, multiplicities of suits, or circuit of actions. Equity will not suffer a wrong without a remedy." *King v. City of Bloomington*, 159 N.E.2d 563, 571 (Ind. 1959). "A court's power to award attorneys' fees to a party has long been established." *In re Estate of Kroslack*, 570 N.E.2d 117, 120 (Ind. Ct. App. 1991).

\* \* \* \* \*

6. Third, this Court has authority to award fees under the common-law obdurate behavior exception: "[t]he obdurate behavior exception only comes into play at the time a party files a knowingly baseless claim or at the time a party discovers that the claim is baseless and fails to dismiss it. Such conduct will constitute obdurate behavior if the trial court determines that it was vexatious and oppressive in the extreme and a blatant abuse of the judicial process." *Kikkert v. Krumm*, 474 N.E.2d 503, 505 (Ind. 1985).

7. This Court also concludes that the frivolous lawsuit statute, Ind. Code § 34-52-1-1, did not abrogate the common-law obdurate behavior exception because the Indiana Supreme Court continued to recognize its validity long after enactment of the frivolous lawsuit statute. *Mitchell v. Mitchell*, 695 N.E.2d 920, 924 (Ind. 1998). As a result, this Court concludes that the common-law obdurate behavior exception is of continuing validity. *Demming v. Underwood*, 943 N.E.2d 878, 888 (Ind. Ct. App. 2011) (concluding that "in cases of doubt, we construe [a] statute as not changing the common law").

Appellant's App. Vol. II pp. 13-14. River Ridge appeals the trial court's grant of attorney fees under these three grounds. We will address each separately.

## A. Recovery under Indiana Code Section 34-52-1-1

[22]    The trial court first awarded attorney fees pursuant to a statutory exception to the American Rule.  Indiana Code Section 34-52-1-1(b) provides:

> In any civil action, the court may award attorney's fees as part of the cost to *the prevailing party*, if the court finds that either party:
>
> (1) brought the action or defense on a claim or defense that is frivolous, unreasonable, or groundless;
>
> (2) continued to litigate the action or defense after the party's claim or defense clearly became frivolous, unreasonable, or groundless; or
>
> (3) litigated the action in bad faith.

(emphasis added).

[23]    "This court has repeatedly stated that 'prevailing party' in the context of attorney fees denotes a party who successfully prosecutes his claim or asserts his defense."  *Delgado v. Boyles*, 922 N.E.2d 1267, 1270 (Ind. Ct. App. 2010), *trans. denied*.  Citing *D.S.I. v. Natare Corp.*, 742 N.E.2d 15, 24 (Ind. Ct. App. 2000), *trans. denied*, and *Ilagan v. McAbee*, 634 N.E.2d 827, 829 (Ind. Ct. App. 1994), the trial court concluded that it had statutory authority to award attorney fees under Indiana Code Section 34-52-1-1(b).  In *D.S.I.*, the parties reached a settlement agreement whereby the plaintiff/counterclaim defendant agreed to withdraw its lawsuit against the defendant/counterclaim plaintiff and agreed to a permanent injunction.  We concluded that "the litigation culminated

successfully for Natare in a judicial order that altered the litigants' legal relationship in a way favorable to Natare." *D.S.I.*, 742 N.E.2d at 25. In *Ilagan*, we noted that "[a] dismissal with prejudice is conclusive of the rights of the parties and is res judicata as to any questions which might have been litigated." *Ilagan*, 634 N.E.2d at 829.

[24] Following *D.S.I.* and *Ilagan*, our Supreme Court, however, addressed the definition of "prevailing party" in *Reuille v. E.E. Brandenberger Const., Inc.*, 888 N.E.2d 770, 771 (Ind. 2008). There, the parties entered into an agreement for the construction of a home, and their contract included a provision for attorneys fees to a "prevailing party." *Reuille*, 888 N.E.2d at 771. Reuille filed a complaint against Brandenberger, alleging breach of contract, breach of warranty, and negligence. Following mediation, "the parties reached a settlement on all issues with the exception of fees, which was explicitly reserved for judicial resolution." *Id.* The trial court then denied Reuille's request for attorney fees.

[25] On appeal, our Supreme Court agreed and held that the term "prevailing party" appeared "to contemplate a trial on the merits and entry of a favorable judgment in order to obtain prevailing party status." *Id.* at 771-72. The Court noted that several other Indiana decisions "corroborate this approach." *Id.* at 772 (citing *Heritage House of Salem, Inc. v. Bailey*, 652 N.E.2d 69, 79-80 (Ind. Ct. App. 1995) (plaintiff is not a prevailing party where it obtained a preliminary injunction but where judgment ultimately was rendered for the defendant), *trans. denied*; *State Wide Aluminum, Inc. v. Postle Distribs., Inc.*, 626 N.E.2d 511,

516-17 (Ind. Ct. App. 1993) (State Wide is not a prevailing party under § 34-1-32-1(b) (now § 34-52-1-1) because it did not receive a judgment), *trans. denied*; *State ex rel. Prosser v. Ind. Waste Sys., Inc.*, 603 N.E.2d 181, 189 (Ind. Ct. App. 1992) (a favorable ruling on a motion is not a judgment allowing the recovery of costs as a prevailing party)). The Court observed that an approach where the term "prevailing party" is "treated with ambiguity or discretion" would provoke "litigation about who won the litigation, in addition to litigation over the appropriate amount of fees." *Id.*

[26]    Without mentioning or addressing *Reuille*, Appellees make a convoluted argument that they were prevailing parties,[5] and we find that their argument is not cogent. *See* Ind. Appellate Rule 46(A)(8)(a). Given our Supreme Court's holding in *Reuille*, we conclude that none of the Appellees were prevailing parties because the complaint was dismissed with prejudice on the motion of River Ridge. As River Ridge argues: (1) the dismissal did not resolve any issues of law or fact; (2) the dismissal occurred before any hearing on a dispositive motion, before meaningful discovery, and before any hearing on the merits; and

---

[5] Appellees rely in part on *Indiana State Bd. of Pub. Welfare v. Tioga Pines Living Ctr., Inc.*, 622 N.E.2d 935, 946 (Ind. 1993), *cert. denied*, 510 U.S. 1195, 114 S. Ct. 1302 (1994), which preceded *Reuille* and held "plaintiffs may be considered prevailing parties without obtaining a favorable final judgment following a full trial on the merits. Plaintiffs may prevail, for example, by consent decree or settlement which grants them the relief sought in bringing suit." *Reuille* distinguished *Tioga Pines*, noting that *Tioga Pines* involved "federal statutory provisions." *Reuille*, 888 N.E.2d at 772 n.2. Regardless, however, there was no consent decree or settlement that granted Appellees relief here, and thus, *Tioga Pines* is inapplicable.

(3) no judicial order was required to effectuate the dismissal under Indiana Trial Rule 41(A)(1)(a). River Ridge properly points out, "[t]here can be lots of reasons to voluntarily dismiss a lawsuit, oftentimes having nothing to do with the suit's validity, yet those reasons nearly never warrant a fees award." Appellant's Reply Br. p. 22. Under these circumstances, none of the Appellees were prevailing parties, and accordingly, Indiana Code Section 34-52-1-1(b) is inapplicable. The trial court's finding on this issue is clearly erroneous.

### B. Obdurate Behavior Exception

[27] River Ridge also argues that the trial court erred by awarding attorney fees to Appellees under the obdurate behavior equitable exception. The "obdurate behavior" exception to the American Rule applies when "courts impose costs upon defendants as a punishment for bringing frivolous actions or otherwise acting in bad faith." *Town of St. John*, 751 N.E.2d at 658 (internal citations omitted).

[28] River Ridge argues that the obdurate behavior exception no longer exists because it has been codified in Indiana Code Section 34-52-1-1(b). We agree. Indiana Code Section 34-52-1-1 was enacted in 1998. The prior version of the statute, Indiana Code Section 34-1-32-1, added the language at issue here in 1986. In 2001, in *Town of St. John*, our Supreme Court noted:

> In *Kikkert v. Krumm*, 474 N.E.2d 503, 505 (Ind. 1985), we discussed the obdurate behavior exception to the American rule, but found it inapplicable under the facts presented. The following year, the Indiana legislature *codified this exception* in what is now Ind. Code Ann. § 34-52-1-1 (West 2001). The

> "General Recovery Rule" allows prevailing parties to recover
> attorney fees if the court finds the other party brought or pursued
> a frivolous, unreasonable or groundless claim or defense, or acted
> in bad faith. *Id.* at § 34-52-1-1(b).

*Town of St. John*, 751 N.E.2d at 659 (emphasis added). More recently, in 2012,

in *Loparex*, our Supreme Court again noted that the "obdurate behavior"

exception is now codified at Indiana Code Section 34-52-1-1. *Loparex*, 964

N.E.2d at 816 n.5.

[29]     Our Supreme Court addressed a similar circumstance in *Kosarko v. Padula*, 979

N.E.2d 144, 145 (Ind. 2012), where the Court held that the "Tort Prejudgment

Interest Statute ["TPIS"] abrogates and supplants the common law

prejudgment interest rules in cases covered by the statute." The Court noted:

> The plain language of the TPIS makes no reference to the
> common law rules governing prejudgment interest, including the
> common law requirement that prejudgment interest can be
> awarded only where the damages are complete and ascertainable.
> But the comprehensive nature of the TPIS and the codification of
> two common law rules convince us that the legislature intended
> the statute to be the exclusive source governing the award of
> prejudgment interest in cases falling within its ambit. Not only
> does the statute establish preconditions for an award of
> prejudgment interest, Ind. Code §§ 34-51-4-5, -6, it also
> affirmatively authorizes the court to award prejudgment interest
> as part of a judgment, *id*. § 35-51-4-7, specifies the types of
> actions to which the statute applies and does not apply, *id*. §§ 34-
> 51-4-1 to -4, and limits the time period and rate of any
> prejudgment interest awarded under the statute, *id*. §§ 34-51-4-8, -
> 9. The statute spans the entire subject of prejudgment interest
> and is capable of being implemented without reference to the

common law. Further, both Indiana Code Section 35-51-4-7 (authorizing the court to award prejudgment interest as part of a judgment) and Section 34-51-4-3 (exempting punitive damages from prejudgment interest) codify rules that already existed at common law for more than one hundred years. *See* [*New York, C. & St. L. Ry. Co. v. Roper*], 176 Ind. [497,] 509-510, 96 N.E. [468,] 473 [(1911)]. Were the TPIS merely supplemental in nature, as the defendant and amicus curiae DTCI contend, then these provisions would be unnecessary since any matters not addressed by the statute would be subject to the common law rules. In light of the wide-ranging treatment of the subject matter, considered in conjunction with the fact that the TPIS expressly adopts only selected portions of the common law, we conclude that the TPIS unmistakably implies the legislature's intent to substitute the statute for the common law with respect to cases falling within the scope of the TPIS.

*Kosarko*, 979 N.E.2d at 149-50.

[30] Given our Supreme Court's statements in *Town of St. John* and *Loparex*, we cannot say that the obdurate behavior exception to the American Rule survived the codification of Indiana Code Section 34-52-1-1 and its predecessor. *See, e.g., Kosarko*, 979 N.E.2d at 149-50. We note, as our Supreme Court did in *Kosarko*, that "[t]o hold otherwise would be to render the statute and its requirements virtually meaningless—a party who failed to fulfill the statute's requirements could merely turn to the common law for relief." *Id.* at 149. Accordingly, the trial court's use of the obdurate behavior exception to award attorney fees to Appellees is clearly erroneous.

## C. Inherent Authority

In general, "[i]n the absence of statutory authority or an agreement between the parties to the contrary—or an equitable exception—a prevailing party has no right to recover attorney fees from the opposition." *C.H. v. A.R.*, 72 N.E.3d 996, 1003 (Ind. Ct. App. 2017). Appellees, however, argue that the trial court had the inherent authority to award them attorney fees as a result of River Ridge's alleged abuses.

Our courts have recognized that a trial court has inherent authority to award attorney fees to a party under certain circumstances. For example, our courts have repeatedly recognized that a trial court has inherent authority to award attorney fees to ensure compliance with court orders. *See, e.g., In re Paternity of Pickett*, 44 N.E.3d 756, 770 (Ind. Ct. App. 2015) ("The trial court has inherent authority to award attorney fees for civil contempt. . . . No statutory sanction is needed as a court's power to enforce compliance with its orders and decrees duly entered is inherent.") (internal citations omitted); *Kahn v. Baker*, 36 N.E.3d 1103, 1116 (Ind. Ct. App. 2015) (affirming the award of attorney fees for contempt because, "apart from any statutory authority, a court has the inherent authority to enforce its orders and to compensate the aggrieved party for losses and damages resulting from another's contemptuous actions"), *trans. denied*; *Allied Prop. & Cas. Ins. Co. v. Good*, 919 N.E.2d 144, 154 (Ind. Ct. App. 2009) (recognizing a trial court's inherent ability to "sanction parties and attorneys for violating orders in limine and causing mistrials . . . to protect the integrity of the

judicial system and to secure compliance with the court's rules and orders"), *trans. denied*.

[33] In fact, our Supreme Court has held in *Noble Cty. v. Rogers*, 745 N.E.2d 194 (Ind. 2001), that:

> To deny a court the power to enforce obedience to its lawful orders against parties who have been subjected properly to its jurisdiction in the first instance, is to nullify its effectiveness as an independent branch of our government. The power of a court to enforce compliance with its orders and decrees duly entered is inherent. No statutory sanction is needed. In both equity and law a court would be powerless to give effective relief were its arms tied by such requirements as relator asserts are necessary.
>
> *State ex rel. Brubaker v. Pritchard*, 236 Ind. 222, 226-27, 138 N.E.2d 233, 235 (1956). *See also O'Conner v. State*, 178 Ind. App. 415, 382 N.E.2d 994, 998 (1978) ("In protecting this discovery process, the trial court has the inherent power to impose sanctions. . . ."), *aff'd*, 272 Ind. 460, 399 N.E.2d 364 (1980). To protect the proper functioning of judicial proceedings, we also have imbedded this power in numerous court rules. *See, e.g.,* Ind. Trial Rule 11, Ind. Trial Rule 37, *Zwiebel v. Zwiebel*, 689 N.E.2d 746, 750 (Ind. Ct. App. 1997) ("[Under Trial Rule 11], the trial court has the discretion to impose sanctions where it determines that the verified motion contains information that the attorney knows to be false."), *transfer denied*. Similarly, the judicial power encompasses the ability to hold a litigant in contempt. *See, e.g., Meyer v. Wolvos*, 707 N.E.2d 1029, 1031 (Ind. Ct. App. 1999) ("We have recognized the inherent judicial power to deal with contempt. No statutory sanction is needed as a court's power to enforce compliance with its orders and decrees duly entered is inherent."), *transfer denied*; *Crowl v. Berryhill*, 678 N.E.2d 828, 831

(Ind. Ct. App. 1997) ("Time and time again, Indiana appellate courts have recognized the inherent judicial power to deal with contempt.").

*Noble Cty.*, 745 N.E.2d at 198-99.

[34] Here, we are not dealing with a party in contempt, violations of the discovery process, or violations of other court orders. Rather, the trial court here awarded attorney fees to Appellees based on a "pattern of obdurate behavior." *See* Appellant's App. Vol. II pp. 29, 31, 36 ("This Court concludes that [River Ridge's] conduct was in bad faith, obdurate, harassing . . . ."); ("litigation was in bad faith, harassing, obdurate, and the lawsuit was groundless") ("baseless litigation") ("advanced meritless claims"); ("negative tactics"). These complaints are grounds for an award of attorney fees under Indiana Code Section 34-52-1-1(b), which we have found inapplicable here.[6] An award of attorney fees under these circumstances would merely circumvent Indiana Code Section 34-52-1-1(b), which we cannot allow. For these reasons, we find that the trial court's findings of fact and conclusions of law are clearly erroneous.

---

[6] Appellees rely, in part, upon *Matter of Estate of Kroslack*, 570 N.E.2d 117, 121 (Ind. Ct. App. 1991). There, Indiana Code Section 34-52-1-1(b) (then Indiana Code Section 34-1-32-1) was inapplicable because the attorney fees were incurred prior to the effective date of the relevant statutory provisions. Moreover, the obdurate behavior exception was inapplicable because it only applied to "situations in which the defendant has been forced to defend a baseless claim." *Kroslack*, 570 N.E.2d at 120. This court, however, affirmed the award of attorney fees based on the party's bad faith and conduct, which was "vexatious and oppressive in the extreme." *Id.* at 121. Here, Indiana Code Section 34-52-1-1(b) was in effect, and an award of attorney fees would circumvent the express language of the statute. Moreover, we do not find that River Ridge acted in bad faith.

# Conclusion

[35] The trial court improperly ordered River Ridge to pay Appellees' attorney fees. We reverse.

[36] Reversed.

Crone, J., and Bradford, J., concur.